Roberto J. Kampfner (CA Bar 179026)
rkampfner@whitecase.com
Andrew Mackintosh (CA Bar 266772)
amackintosh@whitecase.com
Aaron Colodny (CA Bar 293510)
aaron.colodny@whitecase.com
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, CA  90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329

Samuel A. Schwartz (NV Bar 10985)
sam@nvfirm.com
Bryan A. Lindsey (NV Bar 10662)
bryan@nvfirm.com
**SCHWARTZ FLANSBURG PLLC**
6623 Las Vegas Boulevard South, Suite 300
Las Vegas, NV 89119
Telephone:  (702) 385-5544
Facsimile:  (702) 385-2741

*Attorneys for the Debtors*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br>John A. Ritter,<br>☒ Affects this Debtor. | BK-16-10933-btb<br>CHAPTER 11 |
| In re<br>Agave Properties, LLC,<br>☒ Affects this Debtor. | **JOINTLY ADMINISTERED UNDER CASE NO.: BK-16-10933-btb**<br><br>BK-16-13338-btb<br>CHAPTER 11 |
| In re<br>Cliff Rose Investments , LLC,<br>☒ Affects this Debtor. | BK-16-13340-btb<br>CHAPTER 11 |
| In re<br>Focus South Group, LLC,<br>☒ Affects this Debtor. | BK-16-13341-btb<br>CHAPTER 11 |
| In re<br>FSG-S, LLC,<br>☒ Affects this Debtor. | BK-16-13342-btb<br>CHAPTER 11 |

- 1 -

SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017

| | |
|---|---|
| In re<br>JV Properties, LLC,<br>☒ Affects this Debtor. | BK-16-13343-btb<br>CHAPTER 11 |
| In re<br>N.G.A. #2, LLC,<br>☒ Affects this Debtor. | BK-16-13344-btb<br>CHAPTER 11 |
| In re<br>Northwest Investments, LLC,<br>☒ Affects this Debtor. | BK-16-13345-btb<br>CHAPTER 11 |
| In re<br>PV Land Investments, LLC,<br>☒ Affects this Debtor. | BK-16-13346-btb<br>CHAPTER 11 |
| In re<br>Saguaro Equities, LLC,<br>☒ Affects this Debtor. | BK-16-13347-btb<br>CHAPTER 11 |
| In re<br>Southwest Desert Equities, LLC,<br>☒ Affects this Debtor. | BK-16-13348-btb<br>CHAPTER 11 |
| In re<br>Succotash, LLC,<br>☒ Affects this Debtor. | BK-16-13349-btb<br>CHAPTER 11 |
| In re<br>Victor Investments, LP,<br>☒ Affects this Debtor. | BK-16-13350-btb<br>CHAPTER 11<br>Hearing Date: _____, 2017<br>Hearing Time: _____. |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

- 2 -

1

# TABLE OF CONTENTS

2

Page

**ARTICLE I.** DEFINITIONS AND INTERPRETATION ..................................................... 1

3

4

    1.1    Definitions. ................................................................................................... 1
    1.2    Interpretation. ............................................................................................... 1
    1.3    Application of Definitions and Rules of Construction Set Forth in the
           Bankruptcy Code. ....................................................................................... 1
    1.4    Appendices and Plan Documents. ............................................................... 1

5

6

**ARTICLE II.** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ................. 2

7

8

    2.1    Administrative Claims, Gap Claims, and Tax Claims. ............................... 2
    2.2    Classification of Claims and Equity Interests. ........................................... 2
    2.3    Separate Classification of Secured Claims. ................................................ 4
    2.4    Elimination of Vacant Classes ................................................................... 4

9

**ARTICLE III.** IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
                   EQUITY INTERESTS ................................................................ 4

10

11

    3.1    Unimpaired Classes of Claims and Equity Interests. ................................. 4
    3.2    Impaired Classes of Claims and Equity Interests. ...................................... 5
    3.3    Impairment Controversies. .......................................................................... 5

12

13

**ARTICLE IV.** PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
                INTERESTS UNDER THE PLAN ......................................................... 5

14

    4.1    Treatment of Claims. ................................................................................... 5

15

16

**ARTICLE V.** PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
               UNDER THE PLAN ............................................................................. 9

17

    5.1    Unclassified Claims. ................................................................................... 9
    5.2    Treatment of Administrative Claims. .......................................................... 9
    5.3    DIP Claims. ............................................................................................... 10
    5.4    Treatment of Tax Claims. ......................................................................... 10
    5.5    Treatment of Gap Claims ......................................................................... 11

18

19

20

**ARTICLE VI.** ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
                REJECTION BY ONE OR MORE CLASSES OF CLAIMS ............ 12

21

    6.1    Classes Entitled to Vote. ........................................................................... 12
    6.2    Presumed Acceptance of the Plan. ............................................................ 12
    6.3    Presumed Rejection. .................................................................................. 12
    6.4    Class Acceptance Requirement. ................................................................ 12
    6.5    Cramdown. ................................................................................................. 12
    6.6    Lack of Impaired Accepting Class ........................................................... 13

22

23

24

25

**ARTICLE VII.** MEANS FOR IMPLEMENTATION OF THE PLAN .................................. 13

26

    7.1    Operations Between the Confirmation Date and the Effective Date. ................... 13
    7.2    Reorganized Focus. ................................................................................... 13
    7.3    Certain Provisions Involving Ritter. ......................................................... 14
    7.4    The Focus Liquidating Trust. .................................................................... 19

27

28

- i -

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

7.5     Corporate Action.................................................................................. 28
7.6     Settlement of Certain Claims Against the JAR Trust. ........................... 29
7.7     Settlement of Certain Claims Against Holders of Liens in Collateral to Be
        Sold. ..................................................................................................... 29
7.8     Settlement of Claimed Exemptions....................................................... 29
7.9     Settlement of FNBNR1 Claims ........................................................... 29
7.10    Re-vesting of Assets. ............................................................................ 30
7.11    Management and Officers. .................................................................... 30
7.12    Causes of Action. ................................................................................. 30
7.13    Sources of Cash for Plan Distributions................................................. 31
7.14    Certain Provisions Relating to Multibank ............................................ 31
7.15    Certain Provisions Relating to Pacific Western Bank........................... 32
7.16    Reinstatement and Continuation of Insurance Policies ......................... 32

**ARTICLE VIII.** APPOINTMENT OF THE DISBURSING AGENT ....................... 32

8.1     Powers and Duties of the Disbursing Agent. ........................................ 33
8.2     Plan Distributions................................................................................. 33
8.3     Exculpation of Disbursing Agent. ........................................................ 33

**ARTICLE IX.**   PLAN DISTRIBUTION PROVISIONS ...................................... 34

9.1     Plan Distributions................................................................................. 34
9.2     Timing of Plan Distributions. ............................................................... 34
9.3     Address for Delivery of Plan Distributions/Unclaimed Plan Distributions. ......... 34
9.4     De Minimis Plan Distributions. ............................................................ 35
9.5     Time Bar to Cash Payments.................................................................. 35
9.6     Manner of Payment Under the Plan. ..................................................... 36
9.7     Fractional Plan Distributions. ............................................................... 36
9.8     Surrender and Cancellation of Instruments........................................... 36

**ARTICLE X.**    PROCEDURES FOR RESOLVING AND TREATING CONTESTED
                CLAIMS................................................................................... 37

10.1    Objection Deadline............................................................................... 37
10.2    Prosecution of Contested Claims. ......................................................... 37
10.3    Claims Settlement................................................................................. 37
10.4    Entitlement to Plan Distributions upon Allowance............................... 37

**ARTICLE XI.**   CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
                AND THE OCCURRENCE OF THE EFFECTIVE DATE ............... 38

11.1    Conditions Precedent to Confirmation.................................................. 38
11.2    Conditions Precedent to the Effective Date. ......................................... 38
11.3    Waiver of Conditions. .......................................................................... 39
11.4    Effect of Non-Occurrence of the Effective Date................................... 40

**ARTICLE XII.**  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                LEASES ................................................................................... 40

12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.......... 40
12.2    Cure Claims.......................................................................................... 42
12.3    Claims Arising from Rejection, Expiration or Termination. ................. 42

- ii -

**ARTICLE XIII.** RETENTION OF JURISDICTION ................................................................. 43

    13.1    Scope of Retention of Jurisdiction. ......................................................... 43
    13.2    Failure of the Bankruptcy Court to Exercise Jurisdiction. ..................................... 45

**ARTICLE XIV.** SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
                             PROVISIONS ................................................................. 46

    14.1    Satisfaction of Claims. ......................................................... 46
    14.2    Release of Liens. ......................................................... 46
    14.3    Exculpation. ......................................................... 46
    14.4    Discharge of Claims and Termination of Equity Interests. .................................... 47
    14.5    Releases of Claims from Holders ......................................................... 48
    14.6    Releases by the Debtors. ......................................................... 48
    14.7    Certain Releases by Ritter and Reorganized Focus ......................................... 48
    14.8    Injunctions. ......................................................... 49
    14.9    VTS Adversary. ......................................................... 50
    14.10   No Effect on South Edge Settlement. ...................................................... 50

**ARTICLE XV.**  MISCELLANEOUS PROVISIONS ................................................................. 50

    15.1    Payment of Statutory Fees. ......................................................... 50
    15.2    Notices. ......................................................... 50
    15.3    Headings. ......................................................... 52
    15.4    Governing Law. ......................................................... 52
    15.5    Expedited Determination. ......................................................... 52
    15.6    Exemption from Transfer Taxes. ......................................................... 52
    15.7    Notice of Entry of Confirmation Order and Relevant Dates. ................................ 52
    15.8    Interest and Attorneys' Fees. ......................................................... 52
    15.9    Modification of the Plan. ......................................................... 53
    15.10   Setoff Rights. ......................................................... 53
    15.11   Compliance with Tax Requirements. ..................................................... 54
    15.12   Binding Effect. ......................................................... 54
    15.13   Severability. ......................................................... 54
    15.14   No Admissions. ......................................................... 55
    15.15   Termination of the Committee; Deemed Existence for Certain Limited
               Purposes. ......................................................... 55
    15.16   Further Assurances. ......................................................... 56

EXHIBITS

    Glossary of Defined Terms ...................................................... Exhibit A

SCHEDULES

    Focus Entities ...................................................... Schedule 1
    Focus Assets ...................................................... Schedule 2
    Personal Secured Claims ...................................................... Schedule 3
    Ritter Backstop Collateral ...................................................... Schedule 4
    Non-Exempt Assets ...................................................... Schedule 5
    Bank Accounts ...................................................... Schedule 6

- iii -

John A. Ritter and each of the other above-captioned debtors (collectively, the "Debtors") hereby jointly propose the following chapter 11 plan of reorganization for the Debtors (the "Plan"):

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**1.1    Definitions.**

The capitalized terms used herein shall have the respective meanings set forth in the Glossary of Defined Terms attached hereto as Exhibit A.

**1.2    Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  The word "including" (in its various forms) means "including without limitation."  Whenever the Plan permits or requires the approval or order of the Bankruptcy Court, the movant shall comply with all notice requirements provided by the Bankruptcy Code, Bankruptcy Rules, and/or Local Rules.

**1.3    Application of Definitions and Rules of Construction Set Forth in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.4    Appendices and Plan Documents.**

All appendices and schedules to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  All Plan Documents not otherwise filed herewith shall be filed with the clerk of the Bankruptcy Court

- 1 -

prior to the commencement of the Confirmation Hearing. Holders of Claims may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

> In re John Ritter et al Claims Processing Unit
> c/o Phase Eleven Consultants Corporation
> 212 W. Van Buren Street, Suite 200
> Chicago, IL 60607-3930

## ARTICLE II.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims against and Equity Interests in the Debtors shall be classified as set forth in this Article II.

**2.1    Administrative Claims, Gap Claims, and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Gap Claims, and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article V.

**2.2    Classification of Claims and Equity Interests.**

All Claims and Equity Interests, other than Administrative Claims, Gap Claims, and Tax Claims are classified in the classes set forth in this Article II for all purposes, including voting, Confirmation, and distributions pursuant to the plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular class only to the extent that any portion of such Claim or Equity Interest qualifies within the description of that class and is classified in other classes to the extent that any portion of such Claim or Equity Interest qualifies with the description of such other classes. A Claim or Equity Interest also is classified in a particular class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Equity Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan is a single plan of reorganization for the jointly administered Chapter 11 Cases, but does not constitute a substantive consolidation of the

- 2 -

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

Debtors' Estates for voting purposes.  The Plan, though proposed jointly, constitutes a separate plan for each of the Debtors for voting purposes.  Therefore, all Claims against and Equity Interests in a particular Debtor are placed in the classes set forth below with respect to such Debtor.  Classes that are not applicable as to a particular Debtor shall be eliminated as set forth more fully in Section 2.4 below.

The classes of Claims and Equity Interests against the Debtors shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all Priority Claims against the Debtors.

Class 2 – Focus Entity Secured Claims.  Class 2 shall consist of Focus Entity Secured Claims against the Focus Entities.

Class 3 – Personal Secured Claims.  Class 3 shall consist of all Personal Secured Claims against Ritter.

Class 4 – Principal Residence Secured Claims.  Class 4 shall consist of all Principal Residence Secured Claims against Ritter.

Class 5 – Secured Tax Claims.  Class 5 shall consist of all Secured Tax Claims against the Debtors.

Class 6 – Bonita Cougar Claims.  Class 6 shall consist of all Bonita Cougar Claims against Succotash, LLC and Ritter.

Class 7 – Multibank Secured Claim.  Class 7 shall consist of the Multibank Secured Claim.

Class 8 – PWB Secured Claims.  Class 8 shall consist of all PWB Secured Claims against Ritter.

Class 9 – ICW Claims.  Class 9 shall consist of all ICW Claims against Ritter.

Class 10 – Unsecured Claims.  Class 10 shall consist of all Unsecured Claims against the Debtors.

Class 11 – Subordinated Claims.  Class 11 shall consist of all Subordinated Claims against the Debtors.

Class 12 – FNBNR1 Claims.  Class 12 shall consist of all FNBNR1 Claims against Ritter and PV Land Investments, LLC.

Class 13 – Non-FIG Equity Interests.  Class 13 shall consist of the Non-FIG Equity Interests in the Focus Entities.

Class 14 – FIG Equity Interests.  Class 14 shall consist of the FIG Equity Interests in the Focus Entities.

**2.3     Separate Classification of Secured Claims.**

Although the Focus Entity Secured Claims and the Personal Secured Claims have each been placed into single classes for ease of reference, Focus Entity Secured Claims and Personal Secured Claims shall, for the purposes of voting on the Plan and receiving Plan Distributions, be classified according to the Assets purportedly securing such claims and the priority of their holders' Liens, such that all Claims purportedly secured by equal rank Liens in the same Assets shall be classified together.  Such classes comprised of Focus Entity Secured Claims shall be designated as Class 2A, Class 2B, Class 2C, etc., and such classes comprised of Personal Secured Claims shall be designated as Class 3A, Class 3B, Class 3C, etc.

**2.4     Elimination of Vacant Classes**

Any class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE III.**

**IDENTIFICATION OF IMPAIRED
CLASSES OF CLAIMS AND EQUITY INTERESTS**

**3.1     Unimpaired Classes of Claims and Equity Interests.**

Class 1 – Priority Claims, Class 4 – Principal Residence Secured Claims, and Class 5 – Secured Tax Claims are not impaired under the Plan.

- 4 -

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

**3.2** **Impaired Classes of Claims and Equity Interests.**

Except as provided in Section 3.1, all classes of Claims and Equity Interests are impaired under the Plan.

**3.3** **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest or any class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**ARTICLE IV.**

**PROVISIONS FOR TREATMENT OF CLAIMS AND
EQUITY INTERESTS UNDER THE PLAN**

**4.1** **Treatment of Claims.**

The classes of Claims against and Equity Interests in the Debtors shall be treated under the Plan as follows:

(a)    Class 1 – Priority Claims.

Each holder of an Allowed Priority Claim against the Debtors shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), either (i) cash in the amount of such holder's Allowed Priority Claim; or (ii) such other treatment as may be agreed upon by the Debtors (or, if after the Effective Date, the Disbursing Agent) and such holder; provided, however, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Priority Claim.

(b)    Class 2 – Focus Entity Secured Claims.

As part of the solicitation of the Plan, each holder of a Focus Entity Secured Claim will receive a ballot to either accept or reject the Plan.

(i)    If a class of holders of Focus Entity Secured Claims accepts the Plan, the Collateral securing such Focus Entity Secured Claims shall be Collateral to Be Sold and transferred to the Focus Liquidating Trust free and clear of all Liens, Claims and encumbrances.  Thereafter, as more fully set forth in Section 7.4(d), the Focus

- 5 -

Liquidating Trustee shall sell such Collateral to Be Sold in a commercially reasonable manner and shall pay the holders in such class, on a pro rata basis, 50% of the Net Proceeds from the sale of such Collateral to Be Sold to the holders of such Focus Entity Secured Claims.

(ii)    If a class of holders of Focus Entity Secured Claims rejects the Plan, the Collateral securing the Focus Entity Secured Claims shall be Other Collateral and transferred to the Focus Liquidating Trust subject to all of the Liens securing such Focus Entity Secured Claims for disposition in accordance with Section 7.4(d).

(c)    Class 3 – Personal Secured Claims.

Each holder of an Allowed Personal Secured Claim shall neither receive nor retain property under the Plan.  Pursuant to Section 7.3(d), *infra*, Mr. Ritter shall cause the Personal Secured Claims to be satisfied by the liquidation of the CD Collateral.

(d)    Class 4 – Principal Residence Secured Claims.

On the Effective Date, each Principal Residence Secured Claim shall be reinstated in its entirety and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code.

(e)    Class 5 – Secured Tax Claims.

On the Effective Date, each Secured Tax Claim shall be reinstated in its entirety, including any and all statutory interest and associated penalties, except that the taxing authority shall be enjoined from taking any action (including preparing the property for a tax auction and/or selling the same at a tax auction pursuant to N.R.S. 361 or any other applicable law) against the property securing its Secured Tax Claim for six (6) months from the Effective Date.  After the expiration of the six (6) month injunction, each holder of a Secured Tax Claim shall be entitled to collect all amounts owed and assert any and all rights and remedies provided for under applicable law without the need for relief from stay or Court order.  All rights of holders of Allowed Secured Tax Claims pursuant to section 511 of the Bankruptcy Code are expressly preserved.

(f)    Class 6 – Bonita Cougar Claims.

The Bonita Cougar Claim shall be treated as set forth in that certain Settlement Agreement by and between Bonita Cougar, LLC, Succotash, LLC, and Ritter which has been approved by the

- 6 -

SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017

1  Bankruptcy Court.

2        (g)    Class 7 – Multibank Allowed Secured Claim.

3        On the Effective Date and in complete satisfaction of the Multibank Allowed Secured

4  Claim, the holder of the Multibank Allowed Secured Claim shall receive the following treatment:

5  The Multibank Property shall be transferred to the Focus Liquidating Trust subject to the Liens of

6  Multibank securing the Multibank Allowed Secured Claim.  The Focus Liquidating Trust shall

7  market the property during the twelve months following the Effective Date.  Upon the sale of the

8  Multibank Property, Multibank shall receive all of the net proceeds of such sale until it has

9  received $900,000.  Thereafter, 75% of any additional net proceeds shall be paid to Multibank

10  and the remaining 25% of such net proceeds shall be paid to the Focus Liquidating Trust.

11        If the Multibank Property has not been sold by the Focus Liquidating Trust within the first

12  year following the Effective Date, absent agreement from Multibank to the contrary, the Focus

13  Liquidating Trust shall transfer such property to Multibank or its designee.

14        (h)    Class 8 – PWB Secured Claims.

15        On the Effective Date, in complete satisfaction of the PWB Secured Claims, the holder of

16  the PWB Secured Claims shall receive the following treatment:  The PWB Purported Collateral

17  shall be transferred to the Focus Liquidating Trust subject to the purported Liens of PWB upon

18  such PWB Purported Collateral and shall be liquidated by the Liquidating Trustee with PWB to

19  be paid, from the closing of each of the sales of the PWB Purported Collateral, a sum equal to the

20  greater of the 30% of the net proceeds received from the sales of the PWB Purported Collateral or

21  $150,000.   In the event the PWB Purported Collateral is sold in more than one lot, PWB shall

22  receive 30% of the net proceeds received from the sale of each lot and, upon sale of the final lot

23  of the PWB Purported Collateral, if 30% of the net proceeds from the sale of all of the PWB

24  Purported Collateral is less than $150,000, the Liquidating Trustee shall pay PWB such additional

25  amount as is required to pay PWB not less than a total of $150,000.

26        (i)    Class 9 – ICW Claims.

27        On the Effective Date, the ICW Claims shall be Allowed in an amount equal to the sum of

28  (a) $350,000 and (b) the Outstanding Premium Amount on such date.   Thereafter, until the

SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017

occurrence of an ICW Payment Event, the ICW Claims shall decrease on a dollar for dollar basis as premiums in respect of Outstanding Bonds are paid by the Focus ICW Settlement Parties; provided that in no event shall the Allowed amount of the ICW Claims be less than $35,000. Within five (5) Business Days after the earlier of (x) the occurrence of an ICW Payment Event and (y) the reduction of the ICW Claim to $35,000, Ritter shall pay the ICW Claims in full and in cash. In addition, Ritter shall at all times devote such time as shall be reasonably necessary to cause Mountain's Edge to perform its duties under the ICW Settlement Agreement without compensation from the Focus Liquidating Trust.

       (j)      Class 10 – Unsecured Claims.

Each holder of an Allowed Unsecured Claim shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), its Pro Rata Share of the Class A Liquidating Trust Beneficial Interests as to which all holders of Allowed Unsecured Claims would be entitled as if all classes at all Debtors were a single class; provided, however, that a holder of an Allowed Unsecured Claim against more than one Debtor shall be treated as holding a single Claim and limited to a single recovery on account of all such Allowed Unsecured Claims.

       (k)      Class 11 – Subordinated Claims.

Each holder of an Allowed Subordinated Claim shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), its Pro Rata Share of the Class B Liquidating Trust Beneficial Interests as to which all holders of Allowed Subordinated Claims would be entitled as if all classes at all Debtors were a single class.

       (l)      Class 12 – FNBNR1 Claims.

On the Effective Date, in full satisfaction of its Claim, each holder of an FNBNR1 Claim shall receive the benefits of the settlement set forth in Section 7.9 of the Plan.

       (m)      Class 13 – Non-FIG Equity Interests.

Each holder of an Allowed Non-FIG Equity Interest shall neither receive nor retain property under the Plan.

       (n)      Class 14 – FIG Equity Interests.

Each holder of an Allowed FIG Equity Interest shall receive, on the Effective Date, its Pro

- 8 -

Rata Share of Reorganized Focus.

## ARTICLE V.

### PROVISIONS FOR TREATMENT
### OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**5.1     Unclassified Claims.**

Administrative Claims, Gap Claims, and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, as applicable.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**5.2     Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)     Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable in the ordinary course of business by Ritter (and not past due); (iii) a claim that is an allowed claim pursuant to section 503(b)(1)(B) or (C) of the Bankruptcy Code; or (iv) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on Ritter, the Focus Entities, the Disbursing Agent and the Office of the United States Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation.  Such notice must include at a minimum (A) the name of the holder of the Claim; (B) the amount of the Claim; and (C) the basis of the Claim.  **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b)     Time for Filing Fee Claims.

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on the Disbursing Agent and on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date.  **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.**

- 9 -

(c)    Allowance of Administrative Claims/Fee Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) shall become an Allowed Administrative Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date; and (ii) the date of service of the applicable notice of Administrative Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 60-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)    Payment of Allowed Administrative Claims.

On the applicable Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment; or (ii) such other treatment as may be agreed upon in writing by the Debtors (or, if after the Effective Date, the Disbursing Agent) and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; and provided further that an Administrative Claim representing a liability incurred and payable in the ordinary course of business of an Estate may be paid at the Debtors' election in the ordinary course of business.

**5.3    DIP Claims.**

On or prior to the Effective Date, all of the DIP Claims shall be waived and released by the DIP Lender without further order of the Court.

**5.4    Treatment of Tax Claims.**

On the applicable Plan Distribution Date, each holder of an Allowed Tax Claim shall receive in full satisfaction of such Allowed Tax Claim either (i) cash in the amount of such holder's Allowed Tax Claim; or (ii) such other treatment as may be agreed upon by the Debtors (or, if after the Effective Date, the Disbursing Agent) and such holder; provided, however, that

- 10 -

such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Tax Claim.  The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against Reorganized Focus, Ritter, the Debtors or any responsible person, officer or director of Reorganized Focus or the Debtors that otherwise would be liable to such holder for payment of a Tax Claim.  So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this <u>Section 5.4</u> or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

**5.5     <u>Treatment of Gap Claims</u>**

The holder of a Gap Claim must file with the Bankruptcy Court and serve on Ritter, the Focus Entities, the Disbursing Agent and the Office of the United States Trustee, notice of such Gap Claim within forty (40) days after service of Notice of Confirmation.  Such notice must include at a minimum (A) the name of the holder of the Claim; (B) the amount of the Claim; and (C) the basis of the Claim.  **Failure to file and serve such notice timely and properly shall result in the Gap Claim being forever barred and discharged.**

On the applicable Plan Distribution Date, each holder of an Allowed Gap Claim shall receive in full satisfaction of such Allowed Gap Claim either (i) cash in the amount of such holder's Allowed Gap Claim; or (ii) such other treatment as may be agreed upon by the Debtors (or, if after the Effective Date, the Disbursing Agent) and such holder; <u>provided</u>, <u>however</u>, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Gap Claim.

- 11 -

# ARTICLE VI.

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**6.1    Classes Entitled to Vote.**

Except for Class 1 – Priority Claims, Class 3 – Personal Secured Claims, Class 4 – Principal Residence Secured Claims, Class 5 – Secured Tax Claims, and Class 13 – Non-FIG Equity Interests, all classes of Claims and Equity Interests are entitled to vote on the Plan.

**6.2    Presumed Acceptance of the Plan.**

Class 1 – Priority Claims, Class 4 – Principal Residence Secured Claims, and Class 5 – Secured Tax Claims are unimpaired.  Each Holder of a Claim in such class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**6.3    Presumed Rejection.**

Class 3 – Personal Secured Claims and Class 13 – Non-FIG Equity Interests will neither receive nor retain property under the Plan.  Each holder of a Claim in either Class 3 or Class 13 is presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**6.4    Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.  A class of Equity Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) in amount of Equity Interests in that class that have voted on the Plan.

**6.5    Cramdown.**

The Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does

- 12 -

not discriminate unfairly with respect to each class of Claims and Equity Interests that is impaired under, and has not accepted, the Plan.

**6.6**    **Lack of Impaired Accepting Class**

If the Plan is not accepted by at least one Impaired class at a Focus Entity, the Plan shall be deemed amended without any further action of the Debtors to exclude such Focus Entity (an "Excluded Debtor") from the Plan, and the Confirmation Hearing in respect of the Plan as to such Excluded Debtor shall be adjourned until further notice or order of the Bankruptcy Court. Such deemed amendment shall be without prejudice to the Debtors to further amend, modify, or revoke the Plan and/or submit any new plan of reorganization as it relates the Excluded Debtor.

If the above-described amendment occurs, the Confirmation Order shall provide for the appointment of the Liquidating Trustee as trustee of the Excluded Debtor pursuant to section 1104(a)(2) of the Bankruptcy Code. The Liquidating Trustee, as chapter 11 trustee, shall be responsible for the administration of the Excluded Debtor. The Liquidating Trustee shall use commercially reasonable efforts to administer the Focus Assets of that Excluded Debtor in accordance with Section 7.4(g) hereof.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1**    **Operations Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**7.2**    **Reorganized Focus.**

On the Effective Date, each of the following shall occur or shall be deemed to have occurred in the order set forth below:

- 13 -

(a)    Each Focus Entity shall be merged into a single limited liability company organized under the laws of the State of Nevada.  Such limited liability company shall be referred to herein as "<u>Reorganized Focus</u>,"

(b)    All of the Equity Interests in the Focus Entities shall be cancelled and Reorganized Focus shall issue 100% of its Equity Interests to FIG; and

(c)    All of the Focus Assets, including the Prepack Class B Membership Interests and the related operating agreements existing as of the Effective Date shall be transferred to the Focus Liquidating Trust.  Notwithstanding the foregoing, if the transfer of a Prepack Class B Membership Interest would result in the loss of such Prepack Class B Membership Interest under applicable law, only the economic interest of such Prepack Class B Membership Interest shall be transferred to the Focus Liquidating Trust.  All other associated rights shall remain with Reorganized Focus, but shall be exercised solely in accordance with the Focus Agreement. Except as expressly set forth in the Plan, the Focus Assets shall be transferred to the Focus Liquidating Trust free and clear of Liens, Claims and other encumbrances.

**7.3    <u>Certain Provisions Involving Ritter.</u>**

(a)    <u>Transfer of Assets.</u>  <u>Except</u> as set forth in <u>Section 7.3(b)</u> below, on the Effective Date, except as set forth in the Plan, Ritter shall transfer the Non-Exempt Assets into the Focus Liquidating Trust free and clear of Liens, Claims and other encumbrances.  To the extent an Asset transferred to the Focus Liquidating Trust constitutes an interest in a limited liability company, partnership, or corporation Ritter shall, at the request of the Focus Liquidating Trust, undertake commercially reasonable efforts to cause or enable the Liquidating Trustee to liquidate the Assets of such limited liability company, partnership, or corporation and undertake commercially reasonable efforts to maximize the value of such interest to the Focus Liquidating Trust.

(b)    <u>Exempt Assets.</u>  Notwithstanding anything in <u>Section 7.3(a)</u>, on the Effective Date, except as set forth in the Plan, the Exempt Assets shall revest in Ritter free and clear of all Liens, Claims and encumbrances.  On and after the Effective Date, Ritter may use and dispose of the Exempt Assets and acquire and dispose of future assets free of any restrictions of the Bankruptcy

- 14 -

Code, except to the extent any portion of the Exempt Assets are Ritter Note Collateral or Ritter Backstop Collateral which shall be treated as set forth in <u>Section 7.3(g)-(h)</u> herein.

          (c)     <u>HW 2014 Liquidating Trust Note.</u>  On the Effective Date, the HW 2014 Irrevocable Trust shall amend and restate the Existing HW 2014 Notes.  Such amendment and restatement shall require the HW 2014 Irrevocable Trust to issue to Clydesdale an amended and restated promissory note (the "<u>HW 2014 Liquidating Trust Note</u>") in the principal amount of $2,500,000.  Immediately upon issuance, Clydesdale shall assign the HW 2014 Liquidating Trust Note to the Focus Liquidating Trust.  The HW 2014 Liquidating Trust Note shall mature on April 13, 2029 and bear interest at an annual rate of 2.75% simple interest.  All interest and principal shall be payable in Cash at maturity.  The HW 2014 Liquidating Trust Note may be prepaid at any time without premium or penalty.  The HW 2014 Liquidating Trust Note shall be subject to mandatory prepayment upon the occurrence of certain liquidity events specified in the HW 2014 Liquidating Trust Note and shall be subject to the HW 2014 Notes Intercreditor Agreement.  The HW 2014 Liquidating Trust Note will be attached to the Plan Supplement.

          (d)     <u>HW 2014 Notes Intercreditor Agreement</u>.  On the Effective Date, Clydesdale, the Focus Liquidating Trust, and the HW 2014 Trust shall execute an intercreditor agreement (the "<u>HW 2014 Notes Intercreditor Agreement</u>") governing the rights and remedies of Clydesdale and the Focus Liquidating Trust with respect to the HW 20014 Liquidating Trust Note and the Existing HW 2014 Notes.  The HW 2014 Notes Intercreditor Agreement shall provide, among other things, that all existing and future promissory notes issued by the HW 2014 Irrevocable Trust, including any Existing HW 2014 Notes amended and restated pursuant to this Plan (other than the HW 2014 Liquidating Trust Note), shall be subordinated in all respects, including without limitation right of payment to the HW 2014 Liquidating Trust Note and not mature prior to or contain materially better terms than the HW 2014 Liquidating Trust Note.  The HW 2014 Notes Intercreditor Agreement shall contain payment anti-circumvention provisions agreed on by the Committee and the Debtors.  The HW 2014 Notes Intercreditor Agreement will be attached to the Plan Supplement.

- 15 -

(e)    Certain Liens.  Except with respect to the Principal Residence Secured Claim, Ritter shall cause the JAR Trust to (i) liquidate the CD Collateral, (ii) apply the proceeds thereof to the indebtedness secured thereby and (iii) release any other Liens securing such indebtedness.

(f)    Involvement in Prepack Entities.  Subject to the oversight of the Liquidating Trustee, Ritter shall manage the Prepack Entities on the terms and conditions set forth in the Focus Agreement and shall under no circumstances voluntarily abandon direct involvement in the Prepack Entities for the term of the Focus Liquidating Trust.

(g)    The Ritter Note.  On the Effective Date, Mr. Ritter shall issue the Ritter Note to the Focus Liquidating Trust.  The Ritter Note shall have a principal amount of $2,000,000 and bear interest at an annual rate of 5% simple interest.  Interest shall be payable in cash and in arrears on a quarterly basis.  The Ritter Note will mature and be payable in full and in cash on the third (3rd) anniversary of the Effective Date.  The Ritter Note may be prepaid at any time without premium or penalty.  The Ritter Note shall be secured by a Lien upon the Ritter Note Collateral (which Lien shall be senior to all Liens, except for Permitted Liens).  The security documents granting those liens will be attached to the Plan Supplement.  The Liquidation Trust shall be entitled to collect its reasonable attorneys' fees and costs from Ritter in the event of non-payment of the Ritter Note.  In the event the Ritter Note Collateral must be liquidated and/or applied to pay any outstanding past due amounts owing under the Ritter Note, such collateral shall be liquidated and/or applied as follows until the Ritter Note is paid in full.

(i)    First, the Forest Mountain Collateral;

(ii)    Second, if any amounts remain past due and outstanding in respect of the Ritter Note after the application of the proceeds of the Forest Mountain Collateral, the proceeds in the Cash Collateral Account shall be applied to the satisfy such outstanding past due amounts;

(iii)    Third, if any amounts remain past due and outstanding in respect of the Ritter Note after the application of the Forest Mountain Collateral and the cash in the Cash Collateral Account, the Ritter Real Estate Collateral shall be liquidated and applied to any such remaining amounts;

(iv)    Fourth, if any amounts remain past due and outstanding in respect of the Ritter Note after the application of the Forest Mountain Collateral, the cash in the Cash Collateral Account, and the proceeds of the Ritter Real Estate Collateral, the Life Insurance Policies shall be liquidated and applied to any such remaining amounts. Notwithstanding the foregoing, if Ritter defaults with respect to any payment due under

- 16 -

the Life Insurance Policies, the Liquidating Trustee may make protective advances under the assignment agreement to cure such default or immediately obtain the surrender value of such policy and deposit such amount in the Cash Collateral Account; and

(v)    Fifth, if any amounts remain past due and outstanding in respect of the Ritter Note after the application of the Forest Mountain Collateral, the cash in the Cash Collateral Account, the proceeds of the Ritter Real Estate Collateral, and the proceeds of the Life Insurance Policies, the trustee of the JS NV 2009 Irrevocable Trust shall within a reasonable time make distributions to the Focus Liquidating Trust for application to such amounts, but only to the extent required to fully pay such amounts; provided, that such distributions shall be made no later than the date upon which the Focus Liquidating Trust terminates.

In the event that a payment default exists in respect of the Ritter Note and the Ritter Note has either been accelerated by the Focus Liquidating Trust or has matured, Ritter shall cooperate with the Liquidating Trustee in a commercially reasonable manner to liquidate the Ritter Note Collateral.  Notwithstanding anything set forth in this Section 7.3(g), if Ritter obstructs the Liquidating Trustee's ability to liquidate the Ritter Note Collateral in a material fashion, the order of enforcement set forth in this paragraph (g) shall not apply and the Liquidating Trustee shall be entitled to liquidate the Ritter Note Collateral in any order.  Any dispute regarding whether a material obstruction occurred shall be resolved by the Bankruptcy Court as a contested matter.

(h)    Backstop.  If on the fifth (5th) anniversary of the Effective Date the proceeds actually received by the Focus Liquidating Trust from the liquidation of the Focus Assets and the Non-Exempt Assets are not greater than or equal to the Backstop Amount, the Liquidating Trustee shall provide Ritter with the Backstop Notice.  The Backstop Payment shall be paid on or before thirty (30) days after the date the Backstop Notice is sent.  The Backstop Payment shall be secured by Liens upon the Ritter Backstop Collateral (which Lien shall be senior to all Liens, except for Permitted Liens).  The security documents with respect to those liens will be attached to the Plan Supplement.  In the event that the Ritter Backstop Collateral must be liquidated and/or applied to satisfy any Backstop Payment amounts that are due and owing, such collateral shall be liquidated and/or applied as follows until such amount is paid in full:

(i)    First, any proceeds in the Cash Collateral Account shall be applied to the satisfy such Backstop Payments;

(ii)    Second, if Backstop Payments remain outstanding after the application of the cash in the Cash Collateral Account, the Ritter Real Estate Collateral shall be liquidated and applied to any remaining outstanding Backstop Payments;

- 17 -

(iii)    _Third_, if Backstop Payments remain outstanding after the application of cash in the Cash Collateral Account and the proceeds of the Ritter Real Estate Collateral, the Life Insurance Policies shall be liquidated and applied to any remaining outstanding Backstop Payments.  Notwithstanding the foregoing, if Ritter defaults with respect to any payment due under the Life Insurance Policies, the Liquidating Trustee may make protective advances under the assignment agreement to cure such default or immediately obtain the surrender value of such policy and deposit such amount in the Cash Collateral Account; and

(iv)    _Fourth_, if Backstop Payments remain outstanding after the application of the cash in the Cash Collateral Account, the proceeds of the Life Insurance Policies and the proceeds of the Ritter Real Estate Collateral, the trustee of the JS NV 2009 Irrevocable Trust shall within a reasonable time make distributions to the Focus Liquidating Trust for application to the Backstop Amount, but only to the extent required to fully pay any remaining amounts due and owing on the Backstop Amount; _provided_, that such distributions shall be made no later than the date upon which the Focus Liquidating Trust terminates.

In the event that the Backstop Amount is past due, Ritter shall cooperate with the Liquidating Trustee in a commercially reasonable manner to liquidate the Ritter Backstop Collateral. Notwithstanding anything set forth in this Section 7.3(h), if Ritter obstructs the Liquidating Trustee's ability to liquidate the Ritter Backstop Collateral in a material fashion, the order of enforcement set forth in this paragraph (h) shall not apply and the Liquidating Trustee shall be entitled to liquidate the Ritter Backstop Collateral in the order of its choosing.  Any dispute regarding whether a material obstruction occurred shall be resolved by the Bankruptcy Court as a contested matter.

(i)    The Cash Collateral Account.  So long as no default exists in respect of the Ritter Note, Ritter may sell at any time in an arm's-length sale not involving any Affiliates the Forest Mountain Collateral; provided, that (i) the Liquidating Trustee consents to such sale or such sale is approved by the Bankruptcy Court and (ii) the net proceeds of such sale are used to prepay the Ritter Note.  Further, so long as no default exists in respect of the Ritter Note and the Backstop Payment is not past due, Ritter may sell at any time in an arm's-length sale not involving any Affiliates the Ritter Real Estate Collateral; provided, that (A) the Liquidating Trustee consents to such sale or such sale is approved by the Bankruptcy Court and (B) the net proceeds of any such sale must be placed in a segregated deposit account (the "Cash Collateral Account") pledged to secure the Ritter Note and payment of the Backstop Amount.  The Liquidating Trustee shall have control of the Cash Collateral Account under the terms of an account control agreement

SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017

reasonably satisfactory to the Focus Liquidating Trust and Ritter.  The proceeds in the Cash Collateral Account shall be promptly released to Ritter upon the release or satisfaction of both the Ritter Note and all of the obligations of Ritter to pay the Backstop Amount (if any).

(j)    <u>Certain Provisions Concerning JS NV 2009</u>.  On the Effective Date, the Focus Liquidating Trust and the trustee of the JS NV 2009 shall execute the JS NV 2009 Agreement.

**7.4    <u>The Focus Liquidating Trust.</u>**

(a)    <u>Formation</u>.  Pursuant to section 1123(a)(5) of the Bankruptcy Code on the Effective Date:

(i)    The Focus Liquidating Trust shall be created pursuant to the Liquidating Trust Declaration.  The Liquidating Trust Declaration shall constitute a Plan Document and shall only contain terms and conditions consistent with the Plan and reasonably acceptable to the Debtors and the Committee.  Without limiting the generality of the foregoing, but subject to <u>Section 7.4(d)</u> below, the Liquidating Trust Declaration shall require that all Liquidating Trust Property be distributed subject to the following waterfall:

(A)    <u>First</u>, to satisfy in full any outstanding expenses arising from the administration of the Focus Liquidating Trust, including under the Focus Agreements;

(B)    <u>Second</u>, ratably, to the holders of Class A Liquidating Trust Beneficial Interests until such holders have received, in the aggregate, an amount equal to the Allowed amount of all Unsecured Claims; and

(C)    <u>Third</u>, ratably, to the holders of Class B Liquidating Trust Beneficial Interests until such holders have received, in the aggregate, an amount equal to Allowed amount of Subordinated Claims.

(b)    <u>The Liquidating Trustee</u>.

(i)    The Focus Liquidating Trust shall be administered by a single trustee (the "<u>Liquidating Trustee</u>") who shall be jointly selected by the Committee and Mr. Ritter and identified prior to the commencement of the Confirmation Hearing.

- 19 -

(ii)    Subject to <u>Section 7.4(b)(v)</u>, the Liquidating Trustee shall be solely responsible for (a) administering the assets of the Focus Liquidating Trust (b) asserting all causes of action held by the Focus Liquidating Trust, (c) objecting to claims, and (d) making distributions to creditors.

(iii)    The Focus Liquidating Trust shall have a five (5) member advisory board (the "**Advisory Board**") that shall consult with the Liquidating Trustee regarding the administration of the Focus Liquidating Trust.  The function of the Advisory Board shall be solely to consult with the Liquidating Trustee and the Advisory Board shall have no governance functions.  The members of such advisory board shall be selected by the Committee and their compensation, if any, and/or right to seek reimbursement of expenses shall be set forth in the Liquidating Trust Declaration and subject to approval of the Bankruptcy Court on the Confirmation Date.  Any such compensation or reimbursement shall be funded by the Focus Liquidating Trust.  Nothing herein shall prohibit the Liquidating Trustee from seeking information or input from the Advisory Board.  Notwithstanding the foregoing, the following terms and conditions shall apply in connection with the Advisory Board's role in the Liquidating Trust with respect to a proposed sale by the Liquidating Trustee of Focus Assets or Non-Exempt Assets until such time as any obligations under the Backstop have been satisfied or released:

(A)    The Liquidating Trustee shall provide the Advisory Board with at least fifteen (15) days' notice of the material details and other reasonable requested information of any proposed sale of any Focus Asset or Non-Exempt Asset that the Liquidating Trustee believes is a good faith offer that he or she is prepared to accept, subject to input from the Advisory Board.  The period of time from the issuance of the notice through close of business on the 15th day thereafter is referred to herein as the "Consultation Period."

(B)    The Advisory Board and its members may consult with the Liquidating Trustee during the Consultation Period and the Liquidating Trustee shall use commercially reasonable efforts to consult with the Advisory Board

- 20 -

1    during such period.

2              (C)    At the conclusion of the Consultation Period, the Liquidating

3    Trustee may proceed or not proceed with the sale of Focus Assets or Non-Exempt

4    Assets (as the case may be) regardless of whether the Advisory Board agrees with

5    or opposes such sale.  It is expressly understood that the Advisory Board shall

6    have no authority to veto any sale of Focus Assets or Non-Exempt Assets

7    proposed by the Liquidating Trustee.  Further the Advisory Board and each

8    member thereof shall waive all of his or her rights (1) to object to such sale and

9    (2) to file a lawsuit against the Liquidating Trustee in the Bankruptcy Court or any

10   other court of competent jurisdiction arising from the Liquidating Trustee's

11   decision to sell or not sell Focus Assets or Non-Exempt Assets; provided, that the

12   rights of an Advisory Board member to object to a sale or file a lawsuit against the

13   Liquidating Trustee arising from such sale (or non-sale) shall be immediately

14   restored upon his or her resignation from the Advisory Board.  Any Advisory

15   Board member resigning from the Advisory Board for purposes of objecting to a

16   sale or filing a lawsuit against the Liquidating Trustee may not be reappointed.

17   The remaining Advisory Board members shall promptly replace the resigning

18   member of the Advisory Board; provided that if Ritter, Reorganized Focus, FCG,

19   or any of their Affiliates objects to or otherwise opposes a sale of a Focus Asset or

20   Non-Exempt Asset, then the Advisory Board may respond to such objection or

21   opposition.

22        (iv)   The Liquidating Trustee's compensation shall be determined by the

23   Committee and subject to the approval of the Bankruptcy Court on the Confirmation

24   Date. Additionally, the Committee, with the commercially reasonable assistance of

25   Ritter, shall establish a budget for the Liquidating Trustee to carry out its duties with

26   respect to the Focus Liquidating Trust.

27        (v)    Prior to the satisfaction of the Backstop Amount, the Liquidating Trustee

28   shall engage Mr. Ritter pursuant to the Focus Agreement and, unless Mr. Ritter agrees

- 21 -

otherwise, FCG to sell the Focus Assets or Non-Exempt Assets, <u>provided</u> that, absent an order of the Bankruptcy Court, such sales shall be for cash consideration; <u>provided, further</u> that the Liquidating Trustee may engage a broker other than FCG if (i) the potential purchaser in respect of a proposed sale of Focus Assets or Non-Exempt Assets is an Affiliate of Ritter or the Reorganized Debtor or (ii) FCG breaches a material provision of the Focus Agreement or other written agreement between FCG and the Liquidating Trust or violates an applicable law or regulation and the Bankruptcy Court determines that such breach or violation materially interfered with the exercise of the Liquidating Trustee's duties under the Liquidating Trust Declaration.  FCG shall be entitled to the broker fee set forth in the Focus Agreement with respect to any sale of such assets for which FCG is the broker.  The Liquidating Trustee shall supervise and approve all marketing and sales of Liquidating Trust Property, and all such sales shall be arms-length sales.

(c)      <u>Financial Accounts</u>.  The Focus Liquidating Trust shall maintain its financial accounts in Nevada or such other approved institutions set forth on the schedule to the Liquidating Trust Declaration.

(d)      <u>Assets</u>.  On the Effective Date, the Debtors shall transfer the following assets to the Focus Liquidating Trust to be administered for the benefit of the holders of Liquidating Trust Beneficial Interests on the terms and conditions set forth in the Plan and the Liquidating Trust Declaration:

        (i)      The Focus Assets on the terms and conditions set forth in <u>Section 7.2</u>;

        (ii)      The Non-Exempt Assets on the terms and conditions set forth in <u>Section 7.3</u>;

        (iii)      The Remaining Cash Amount, as soon as reasonably practicable after the Effective Date on the terms and conditions set forth in <u>Section 7.6</u> (subject to reserves deemed necessary in the discretion of Reorganized Focus, in its capacity as Disbursing Agent, Administrative Claims, Gap Claims, and Priority Claims);

        (iv)      The Ritter Note;

1    (v)    The HW 2014 Liquidating Trust Note;

2    (vi)    The Cobalt Series Recovery Right; and

3    (vii)    The Trust Causes of Action.

4    (e)    Purpose of the Focus Liquidating Trust.  The Focus Liquidating Trust shall be

5    established for the primary purpose of liquidating its assets in accordance with Treas. Reg.

6    § 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business,

7    except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the

8    Focus Liquidating Trust.  Accordingly, the Liquidating Trustee shall, in an expeditious but

9    orderly manner, liquidate and convert to Cash the non-Cash Liquidating Trust Property, make

10    timely distributions to the holders of Liquidating Trust Beneficial Interests, and not unduly

11    prolong the duration of the Focus Liquidating Trust.  The Focus Liquidating Trust shall not be

12    deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth

13    herein or in the Liquidating Trust Declaration.  The Focus Liquidating Trust is intended to qualify

14    as a "grantor trust" for federal income tax purposes with the holders of Liquidating Trust Interests

15    treated as grantors and owners of the Focus Liquidating Trust.  As soon as practicable after the

16    Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it

17    necessary or appropriate in his or her sole discretion) shall value the Liquidating Trust Property

18    based on the good faith determination of the Liquidating Trustee.  The valuation shall be used

19    consistently by all parties for all federal income tax purposes.  The Bankruptcy Court shall

20    resolve any dispute regarding such valuation.

21    (f)    Powers of the Liquidating Trustee.  The Liquidating Trustee shall have the power

22    to administer the Liquidating Trust Property in a manner consistent with the Liquidating Trust

23    Declaration, which shall incorporate the powers of a trustee appointed pursuant to section 1104 of

24    the Bankruptcy Code.  Without limiting the generality of the foregoing, the Liquidating Trustee

25    shall (i) hold, administer and sell, the Liquidating Trust Property, including as set forth in

26    Section 7.4(d) above; (ii) have authority to pay all out of pocket expenses incurred in connection

27    with the holding, administration and sale of the Liquidating Trust Property therefrom; (iii) have

28    the power and authority to retain, as an expense of the Focus Liquidating Trust, such attorneys,

- 23 -

advisors, other professionals and employees as may be appropriate to perform the duties required of the Liquidating Trustee hereunder or in the Liquidating Trust Declaration; (iv) prosecute, in its sole discretion, all of the Trust Causes of Action; (v) make distributions as provided in the Liquidating Trust Declaration and this Plan; and (vi) provide periodic reports and updates regarding the status of the administration of the Focus Liquidating Trust.  The Liquidating Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Liquidating Trust Interests pursuant to the Liquidating Trust Declaration.

(g)    Administration of Focus Assets.  Notwithstanding anything set forth in Section 7.4(a) above or in the Liquidating Trust Declaration:

(i)    the Liquidating Trustee shall expeditiously market and sell when deemed appropriate all Focus Assets constituting Collateral to Be Sold.  Upon the sale of any such Collateral to Be Sold, the Liquidating Trustee shall distribute 50% of the Net Proceeds of such sale ratably to the holders of Focus Entity Secured Claims secured by such Collateral to Be Sold.  The remaining 50% shall be available to be distributed pursuant to Section 7.4(a)(i) above;

(ii)    with respect to each Focus Asset constituting Other Collateral, within six (6) months of the Effective Date, the Liquidating Trustee shall determine whether the Liens securing such Other Collateral are in bona fide dispute, and whether the value of such Other Collateral is greater or less than the nominal amount of the Focus Entity Secured Claims secured by such Other Collateral.  If the Liquidating Trustee determines that the Liens securing such Other Collateral are subject to a bona fide dispute, the Liquidating Trustee shall sell such Other Collateral pursuant to section 363(f)(4) of the Bankruptcy Code and deposit the Net Proceeds into an escrow account pending further order of the Bankruptcy Court.  If the Liquidating Trustee determines that the Liens securing such Other Collateral are not subject to a bona fide dispute, but that the value of such Other Collateral is greater than the nominal amount of the Focus Entity Secured Claims secured thereby, the Liquidating Trustee shall expeditiously market and sell such Other Collateral and, upon the sale of such Other Collateral, the Liquidating Trustee shall

- 24 -

1    distribute the Net Proceeds of such sale ratably to the holders of such Focus Entity

2    Secured Claims until such Focus Entity Secured Claims have been paid in full.  Any

3    excess Net Proceeds shall be available to be distributed pursuant to Section 7.4(a) above.

4    If the Liquidating Trustee determines that the Liens securing such Other Collateral are not

5    subject to a bona fide dispute and that the value of such Other Collateral is less than the

6    nominal value of the Focus Entity Secured Claims secured thereby, the Liquidating

7    Trustee shall abandon such Other Collateral to the holders of such Focus Entity Secured

8    Claims and such holders shall be entitled to exercise any remedies that they may have

9    under applicable law, unless the holders of Liens in such Other Collateral and the

10    Liquidating Trustee agree otherwise.  Any disputes concerning the value of any Other

11    Collateral between the Liquidating Trustee and the holders of Focus Entity Secured

12    Claims secured by such Other Collateral shall be resolved by the Bankruptcy Court; and

13            (iii)    Without limiting the authority of the Liquidating Trustee set forth above, it

14    is expressly understood that the Liquidating Trustee shall be authorized to assert all of the

15    rights and claims of the Estates under section 506(d) of the Bankruptcy Code against the

16    holders of Liens in Other Collateral and otherwise in respect of such Liens and the

17    Bankruptcy Court shall have jurisdiction to determine all such rights and claims.  For the

18    avoidance of doubt, a Lien is subject to bona fide dispute for the purposes of the Plan if

19    there exists a bona fide basis on which to void such Lien pursuant to section 506(d) of the

20    Bankruptcy Code.

21            (iv)   All costs associated with the maintenance and sale of the Focus Assets,

22    including, but not limited to, the Payment of Secured Tax Claims and other taxes, land

23    carrying costs, and legal costs shall be paid from the Focus Liquidating Trust.  Ritter

24    will meet and confer with the Committee to formulate a budget of anticipated costs

25    associated with the maintenance and sale of the Focus Assets.

26    (h)    Focus Matters.  On the Effective Date, the Liquidating Trustee shall enter into an

27    agreement with Reorganized Focus, Ritter, FCG and LEHM, LLC (the "Focus Agreement").

28    Such agreement shall provide for the terms on which the Liquidating Trustee will engage

- 25 -

Reorganized Focus, Ritter, and FCG to sell the Focus Assets and Non-Exempt Assets constituting Liquidating Trust Property; provided that Liquidating Trustee shall remain the ultimate decision maker with respect to any action to be taken in respect of the Liquidating Trust Property. The Focus Agreement shall provide for the payment of a monthly fee by the Liquidating Trustee of either (i) $10,000 or (ii) the reimbursement of Ritter and Reorganized Focus by the Liquidating Trustee any reasonable and actual out-of-pocket expenses incurred as part of their efforts to assist the Liquidating Trustee; provided that the Liquidating Trustee and the Advisory Board shall meet on the six (6) month anniversary of the Focus Agreement and every six (6) month anniversary thereafter to review the monthly fee and; provided further, that the Liquidating Trustee may change the selected compensation from a $10,000 monthly fee to out-of-pocket expense reimbursement, or visa versa, immediately following each six (6) month anniversary. The Liquidating Trustee, Ritter, and Reorganized Focus may consensually renegotiate the monthly fee at any time after the Effective Date. The Focus Agreement shall be approved by the Court at the Confirmation Hearing.

(i) Reporting. On or before the thirty (30) days after each anniversary of the Effective Date, the Liquidating Trustee shall provide Ritter and the Advisory Board with an accounting of the liquidation of the Focus Assets (including the Collateral to Be Sold) and the Non-Exempt Assets conducted in each full year following the Effective Date. If, prior to the fifth (5th) anniversary of the Effective Date, the proceeds from the sale of such Assets actually received by the Liquidation Trustee equals or exceeds the Backstop Amount, the Liquidating Trustee shall promptly notify Ritter of such fact in writing and expressly acknowledge in such writing that Ritter shall have no further liability to the Liquidating Trustee for the Backstop Amount.

After the Effective Date, the Liquidating Trustee, Ritter, and Reorganized Focus shall cooperate in good faith with one another to cause the filing of all post-confirmation quarterly reports with the Court.

(j) Termination of Focus Liquidating Trust. The Focus Liquidating Trust will terminate as soon as practicable, but not later than the fifth (5th) anniversary of the Effective Date; provided, that, within six months prior to the fifth (5th) anniversary of the Effective Date

- 26 -

1    (or such later date as may be permitted by order of the Bankruptcy Court), the Bankruptcy Court,

2    upon motion by a party in interest, may extend the term of the Focus Liquidating Trust for a finite

3    period, if such an extension is necessary to liquidate the Liquidating Trust Property or for other

4    good cause.  Multiple extensions of the termination of the Focus Liquidating Trust may be

5    obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each

6    extended term and the Liquidating Trustee receives an opinion of counsel or a favorable ruling

7    from the Internal Revenue Service that any further extension will not adversely affect the status of

8    the Focus Liquidating Trust as a grantor trust for federal income tax purposes.

9        Without limiting the generality of the foregoing, if the HW 2014 Note has not be paid in

10    full at the time that the Focus Liquidating Trust is terminated, the holders of Liquidating Trust

11    Beneficial Interests receiving a distribution of their pro rata share of the HW 2014 Note shall

12    automatically be deemed to have appointed the Liquidating Trustee as their agent to (a) receive

13    any payments made in respect of the HW 2014 Note and (b) enforce the terms of the HW 2014

14    Note as permitted by law, in each case, (1) on and after the termination of the Focus Liquidating

15    Trust and (2) for the benefit of the holders of HW 2014 Note.  The Liquidating Trustee may

16    establish a reasonable reserve from the Liquidating Trust Property to perform its necessary

17    functions as agent for the HW 2014 Note.  The Liquidating Trustee shall use his discretion in

18    collecting the HW 2014 Note and shall have all of the benefits of the exculpations set forth herein

19    and in the Plan.  Upon the payment or enforcement of the HW 2014 Note, the Liquidating Trustee

20    shall distribute the proceeds thereof to the holders of the HW 2014 Note based on their pro rata

21    share of the HW 2014 Note.

22        (k)    Undisclosed Assets.  In the event the Liquidating Trustee or any creditor of Ritter

23    discovers any Asset(s) that is determined by a Final Order to: (i)  be estate property pursuant to

24    section 541 of the Bankruptcy Code; (ii) have a gross aggregate value in excess of $100,000; and

25    (iii) not to have been scheduled or otherwise disclosed to the Committee in writing by the Debtors

26    in these Chapter 11 Cases; such Asset shall be automatically transferred to the Focus Liquidating

27    Trust and Ritter shall take all actions requested by the Liquidating Trustee to evidence such

28    transfer.

- 27 -

(l)    <u>Certain Obligations of the Reorganized Debtors</u>.  Until the termination of the Focus Liquidating Trust, Reorganized Focus and Ritter shall cooperate in a commercially reasonable manner and in good faith with the Liquidating Trustee to assure that the Focus Liquidating Trust has full and complete access to the books and records and other information of Ritter and Reorganized Focus in connection with its duty to hold, administer or sell the Liquidating Trust Property (including the collection of the Ritter Note and the HW 2014 Note and the sale of the Ritter Collateral and the Backstop Collateral, if necessary).  Without limiting the generality of the foregoing, Reorganized Focus and Ritter shall provide the Liquidating Trustee through the termination of the Focus Liquidating Trust with reasonable access to review and copy such records and documents at the Liquidating Trustee's sole cost and expense.

(m)    <u>Certain Exculpations</u>.  The Liquidating Trustee, together with its agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims, Equity Interests, and other parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Liquidating Trustee by the Liquidating Trust Declaration, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, <u>except</u> solely for actions or omissions arising out of the Liquidating Trustee's gross negligence or willful misconduct.

**7.5    <u>Corporate Action.</u>**

The entry of the Confirmation Order shall constitute authorization for the Focus Entities to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including any action required to be taken by any manager of a Focus Entity.  On the Effective Date, the managers of the Focus Entities are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Focus Entities and Reorganized Focus.

- 28 -

**7.6    Settlement of Certain Claims Against the JAR Trust.**

On the Effective Date, the JAR Trust shall pay the JAR Settlement Amount to the Estates. Such payment shall be in full and complete satisfaction and settlement of the JAR Causes of Action. The entry of the Confirmation Order shall be deemed a finding that the settlement set forth in this Section 7.6 was entered into in good faith and is fair, equitable and in the best interests of the Estates. The JAR Settlement Amount shall be used to satisfy Administrative Claims (including Fee Claims), Gap Claims and Priority Claims. As provided in Article VIII, Reorganized Focus shall serve as the Disbursing Agent with respect to such Claims. Any Cash remaining after the payment in full of such Claims shall be contributed to the Focus Liquidating Trust free and clear of all Liens, Claims and encumbrances to be distributed as set forth in Section 7.4(a) above.

**7.7    Settlement of Certain Claims Against Holders of Liens in Collateral to Be Sold.**

On the Effective Date, all Accepting Secured Class Causes of Action shall be released by the Estates and each Lien in and upon Collateral to Be Sold shall be deemed to be perfected, fully enforceable, valid and non-avoidable, subject to the terms of the Plan.

**7.8    Settlement of Claimed Exemptions.**

The Plan shall constitute a settlement fully allowing the exemptions that Ritter has claimed in his *Amended Individual Schedules* [D.I. 583] and the Confirmation Order shall conclusively determine that the property listed therein is exempt in all respects.

**7.9    Settlement of FNBNR1 Claims**

On the Effective Date, in full satisfaction and settlement of the FNBNR1 Claims, FNBNR1 Acquisitions, LLC shall (1) consent to transfer to the transfer of any property securing such Claim to the Focus Liquidating Trust free and clear of all liens; (2) FNBNR1 Acquisitions, LLC will withdraw the FNBNR1 Claims; (3) FNBNR1 Acquisitions, LLC shall waive any subordination rights it may have against any parties in connection with any loans related to the Debtors, including the Slusher Group; and (4) FNBNR1 Acquisitions, LLC and all of its officers, directors, employees, agents, and assigns will receive general releases from the Debtors under the Plan.

- 29 -

**7.10    Re-vesting of Assets.**

Upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan, title to all of the Exempt Assets shall vest in Ritter free and clear of all Liens, Claims, interests and other encumbrances and without further order of the Bankruptcy Court.  On and after the occurrence of the Effective Date, Reorganized Focus and Ritter may use, acquire and dispose of their respective Assets free of any restrictions of the Bankruptcy Code, except to the extent that any Asset is Ritter Note Collateral or Ritter Backstop Collateral which shall be treated as set forth in Section 7.3(g)-(h) herein, respectively.

**7.11    Management and Officers.**

Subject to applicable law, from and after the Effective Date, the managers of Reorganized Focus shall be selected and appointed, in accordance with, and pursuant to, the provisions of applicable law and the Reorganized Focus Company Agreement.  Nothing in this Plan shall constitute an assumption by Reorganized Focus of any Claims or obligations to its employees.

**7.12    Causes of Action.**

Except for the Trust Causes of Action, all Causes of Action of Ritter and his Estate shall, upon the occurrence of the Effective Date, be vested in Ritter.  The rights of Ritter to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

As set forth in Section 7.4(c), the Focus Liquidating Trust shall, upon the occurrence of the Effective Date, be entitled to commence, prosecute or settle the Trust Causes of Action and the Trust Causes of Action shall be preserved in all respects for the benefit of the Focus Liquidating Trust notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that Reorganized Focus, Ritter and/or the Focus Liquidating Trust will not pursue any and all available Causes of Action against them.  Each of Reorganized Focus, Ritter and the Focus Liquidating Trust expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan.  Unless a Cause of Action**

- 30 -

against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, each Focus Entity, Ritter and/or the Focus Liquidating Trust expressly reserves such Cause of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Cause of Action upon or after the confirmation or consummation of the Plan.

For the avoidance of doubt, it is expressly acknowledged that nothing in this Plan shall waive, modify, release or affect the V5 Claims and such claims are fully preserved.

**7.13    Sources of Cash for Plan Distributions.**

The Disbursing Agent shall make Plan Distributions in respect of Administrative Claims (including Fee Claims), Gap Claims and Priority Claims from the JAR Settlement Amount, the NOL Election Refund, the 2015 Tax Return (other than $100,000 of the 2015 Tax Return), the Additional Tax Refund, any other tax refund for any period based on a tax attribute existing prior to the Effective Date (other than $100,000 of the 2015 Tax Refund), and such other Cash not constituting Exempt Assets held by or contributed to the Estates on the Effective Date.  Plan Distributions in respect of Tax Claims shall be made by Ritter from assets other than Liquidating Trust Property.  All other Plan Distributions shall be made from Liquidating Trust Property, with the exception of Plan Distributions on accounts of the ICW Claims, which shall be paid by Ritter as provided in Section 4.1(e).

**7.14    Certain Provisions Relating to Multibank**

The Multibank Allowed Secured Claim shall be Allowed on the Effective Date and treated as set forth in this Plan.  The Multibank Unsecured Claim shall be determined by the Liquidating Trust immediately prior to a Plan Distribution Date involving distributions to Class 10.  If the Multibank Property has been sold by the Liquidating Trust prior to such Plan Distribution Date, the Multibank Unsecured Claim shall be Allowed in an amount equal to $19,868,765.94 minus the amount of proceeds actually received by Multibank as a result of such sale.  If the Multibank Property has been transferred to Multibank prior to such Plan Distribution Date, the Multibank

- 31 -

Unsecured Claim shall be Allowed in an amount equal to $19,868,765.94 <u>minus</u> the value of the Multibank Property. Such value shall be determined either by agreement of Multibank and the Liquidating Trustee or by the Bankruptcy Court. If the Multibank Property has been neither sold nor transferred by the Liquidating Trustee to Multibank prior to a Plan Distribution Date, the Multibank Unsecured Claim shall be Allowed in the amount of $19,868,765.94. Multibank shall have no other Claims against the Debtors other than the Multibank Allowed Secured Claim and the Multibank Unsecured Claim.

**7.15    <u>Certain Provisions Relating to Pacific Western Bank</u>**

The PWB Secured Claims shall be Allowed on the Effective Date and treated as set forth in Section 4.1(h) of this Plan. The PWB Allowed Unsecured Claims shall be Allowed and treated as a Class 10 Claim in the amount of the difference between $3,750,704.09 (the filed amount) less the amount PWB receives with respect to the PWB Secured Claim under Section 4.1(h) of this Plan.

**7.16    <u>Reinstatement and Continuation of Insurance Policies</u>**

From and after the Effective Date, each of the Debtors' insurance policies in effect immediately prior to the Effective Date shall remain in effect in accordance with its terms and shall, to the extent applicable, be deemed assumed by either Mr. Ritter or Reorganized Focus, as applicable, pursuant to section 365 of the Bankruptcy Code.

**ARTICLE VIII.**

**<u>APPOINTMENT OF THE DISBURSING AGENT</u>**

Upon the occurrence of the Effective Date, (a) Reorganized Focus shall be appointed to serve as the Disbursing Agent with respect to all Administrative Claims (including Fee Claims), Gap Claims and Priority Claims, (b) Ritter shall be appointed the Disbursing Agent for Tax Claims and the ICW Claims, and (c) the Liquidating Trustee shall be appointed to serve as the Disbursing Agent with respect to all other Claims. Each of Reorganized Focus, Ritter and the Liquidating Trustee, in its respective capacity a Disbursing Agent, shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

**8.1    Powers and Duties of the Disbursing Agent.**

Pursuant to the terms and provisions of the Plan, with respect to those Claims as to which it serves as Disbursing Agent, each Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in the Plan, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in the Plan; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time, with such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

**8.2    Plan Distributions.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Plan Distribution Date therefor.  The initial Plan Distribution Date shall occur on the Effective Date or as reasonably practicable thereafter.

**8.3    Exculpation of Disbursing Agent.**

**Except as otherwise provided in this Section 8.3, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence.  No holder of a Claim or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers,**

- 33 -

**directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan; or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in this <u>Section 8.3</u> shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Disbursing Agent to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.**

**ARTICLE IX.**

**<u>PLAN DISTRIBUTION PROVISIONS</u>**

**9.1      <u>Plan Distributions.</u>**

The Disbursing Agent shall make all Plan Distributions in accordance with the terms of the Plan. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, <u>except</u> to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**9.2      <u>Timing of Plan Distributions.</u>**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**9.3      <u>Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.</u>**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth in the latest-dated of: (a) the Schedules; (b) any proof of Claim filed by such holder; (c) any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e); and (d) any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be

- 34 -

1    made to such holder unless the Disbursing Agent is notified of such holder's then current address

2    within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice

3    was not provided, a holder shall have forfeited its right to such Plan Distribution.  Undeliverable

4    Plan Distributions made from assets other than Liquidating Trust Property shall be returned to

5    Reorganized Focus.  Undeliverable Plan Distributions made from Liquidating Trust Property,

6    including the Focus Assets, the Non-Exempt Assets, the Remaining Cash Amount, the Ritter

7    Note, the HW 2014 Liquidating Trust Note, the Cobalt Series Recovery Right, the Trust Causes

8    of Action, and any Net Proceeds thereof, shall be returned to the Focus Liquidating Trust.

9    **9.4    De Minimis Plan Distributions.**

10    No Plan Distribution of less than twenty-five dollars ($25.00) shall be made by the

11    Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the

12    Disbursing Agent within ninety (90) days of the Effective Date.  Each Plan Distribution of less

13    than twenty-five dollars ($25.00) as to which no request is made as provided in this Section 9.4

14    shall automatically revert to the applicable Disbursing Agent on the later of (a) the ninety-first

15    (91st) day after the Effective Date; and (b) the date of such Plan Distribution and such Plan

16    Distribution shall revert to the Reorganized Debtor or the Focus Liquidating Trust as set forth in

17    Section 9.3 hereof.

18    **9.5    Time Bar to Cash Payments.**

19    Checks issued in respect of Allowed Claims shall be null and void if not negotiated within

20    one hundred and eighty (180) days after the date of issuance thereof.  Requests for reissuance of

21    any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed

22    Claim to whom such check was originally issued.  Any claim in respect of such a voided check

23    shall be made within thirty days (30) days after the date upon which such check was deemed

24    void.  If no request is made as provided in the preceding sentence, any claims in respect of such

25    voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall

26    revert to the Reorganized Debtor or the Focus Liquidating Trust as set forth in Section 9.3.

27

28

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

**9.6    Manner of Payment Under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign creditors may, in addition to the foregoing, be made at the option of the Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.7    Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made.  Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**9.8    Surrender and Cancellation of Instruments.**

As a condition to receiving any Plan Distribution, on or before the Plan Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note (other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan) shall (a) surrender such certificate, instrument or note representing such Claim, except to the extent assumed by the Debtor; and (b) execute and deliver such other documents as may be necessary to effectuate the Plan.  Such certificate, instrument or note shall thereafter be cancelled and extinguished.  The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes are surrendered; or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form.  Any such holder who fails to surrender such certificates, instruments or notes or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution.  All property in respect of such forfeited Claims shall revert to the Liquidating Trustee.

# ARTICLE X.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

**10.1**    **Objection Deadline.**

The Liquidating Trustee, with the cooperation of Ritter and Reorganized Focus, shall file objections to Claims, if any, with the Bankruptcy Court as soon as practicable, but not later than (a) the date that is one hundred and eighty (180) days after the Effective Date; or (b) such later date as may be established by order of the Bankruptcy Court upon motion of the Liquidating Trustee without notice or a hearing.  The Liquidating Trustee shall serve any objection to a Claim upon the holder of the Claim to which the Liquidating Trustee objects.

**10.2**    **Prosecution of Contested Claims.**

The Liquidating Trustee may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.

**10.3**    **Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Liquidating Trustee shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**10.4**    **Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**ARTICLE XI.**

**CONDITIONS PRECEDENT TO
CONFIRMATION OF THE PLAN AND
THE OCCURRENCE OF THE EFFECTIVE DATE**

**11.1**   **Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)     The clerk of the Bankruptcy Court shall have entered an order or orders
(i) approving the Disclosure Statement as containing "adequate information" pursuant to section
1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan;
(iii) determining that all votes are binding and have been properly tabulated as acceptances or
rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan;
(v) determining that all applicable tests, standards and burdens in connection with the Plan have
been duly satisfied and met by the Debtors and the Plan; (vi) approving the Plan Documents; and
(vii) authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to
execute, implement, and to take all actions otherwise necessary or appropriate to give effect to,
the transactions and transfer of Assets contemplated by the Plan and the Plan Documents;

(b)     The Confirmation Order, the Plan Documents and the Plan are each in a form
reasonably satisfactory to Ritter, Reorganized Focus, and the Committee; and

(c)     The provisions of the Confirmation Order relating to the Focus Liquidating Trust
and the Liquidating Trust Declaration are each in a form reasonably satisfactory to the Committee
and the Liquidating Trustee.

**11.2**   **Conditions Precedent to the Effective Date.**

The following are conditions precedent to the Effective Date:

(a)     (i) The Confirmation Order shall have been entered by the clerk of the Bankruptcy
Court, and (ii) (x) the Confirmation Order remains in full force and effect (y) and not subject to
any stay or injunction;

(b)     All necessary consents, authorizations and approvals shall have been given for the
transfers of property and the payments provided for or contemplated by the Plan, including

- 38 -

satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents;

(c)    The trustee of the JAR Trust shall have paid or agreed to pay on the Effective Date the JAR Settlement Amount;

(d)    HW 2014 Trust shall have issued the HW 2014 Liquidating Trust Note to Clydesdale and Clydesdale shall have assigned the HW 2014 Liquidating Trust Note to the Focus Liquidating Trust;

(e)    FNBNR1 Acquisitions, LLC shall have withdrawn and waived, as of the Effective Date, all of its claims against the Debtors, including, but not limited to, claims numbered 272, 273, 274, 275, 276, 277, and 278.

(f)    The Debtors shall have caused the following entities to waive, as of the Effective Date, their claims: (1) Focus Investment Group, LLC; (2) Focus Investment Manager, LLC; (3) Focus Management Services, LLC; (4) JV-Rhodes, LLC; (5) PV Utility Holdings, LLC; (6) PVJ, LLC; (7) Gemini 5, LP; (8) Victor Visa (VIC 40), LLC; (9) Victor Vista, LLC and (10) the Mustang Trust.

(g)    The Plan Documents (including, for the avoidance of doubt, the Ritter Note, the JS NV Agreement and the assignment of the Cobalt Series Recovery Right) shall be in form and substance reasonably satisfactory to the Committee and the Debtors and shall be executed by the relevant parties thereto;

(h)    The Liquidating Trust Declaration shall have become effective and all conditions to the effectiveness thereof shall have been satisfied or waived; and

(i)    The Disbursing Agent shall have sufficient funds or the ability to obtain sufficient funds to make all the payments required to be made under the Plan.

**11.3    <u>Waiver of Conditions.</u>**

The Debtors may waive any one or more of the conditions set forth in <u>Sections 11.1</u> or <u>11.2</u> in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest; <u>provided</u>, that the conditions set forth in <u>Sections 11.1</u>

(a), 11.1(b), 11.1(c), 11.2(a)(i), 11.2(a)(ii)(x), 11.2(b), 11.2(c), 11.2(d), 11.2(e), 11.2(f), 11.2(g), 11.2(h), and 11.2(i) may only be waived with the approval of the Committee.

**11.4    Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtors; (b) prejudice in any manner the rights of the Debtors or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

**ARTICLE XII.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    On the Effective Date, all executory contracts and unexpired leases of the Debtors shall be treated pursuant to the provisions of section 365 of the Bankruptcy Code, as follows: (i) each contract and lease listed in the Schedule of Rejected Executory Contracts and Unexpired Leases shall be rejected and (ii) each contract and lease listed in the Schedule of Assumed Executory Contracts and Unexpired Leases shall be assumed.  The Debtors shall file the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases nine (9) days prior to the Voting Deadline; provided that the Debtors will provide the Committee notice of the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases and the Committee shall have the right to object.  The Debtors shall use commercially reasonable efforts to identify all executory contracts and unexpired leases subject to rejection in the Schedule of Rejected Executory Contracts and Unexpired Leases.  If an executory contract or unexpired lease is omitted from the Schedule of Rejected Executory Contracts and Unexpired Leases and is not included in the Schedule of Assumed Executory Contracts and Unexpired Leases, such executory contract or unexpired lease shall, nonetheless be deemed rejected pursuant to the terms of this Article XII, except for any executory contract or unexpired lease that (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court, (ii) is the subject of a

- 40 -

separate motion to assume or reject filed by Debtors under section 365 of the Bankruptcy Code before the Confirmation Date, or (iii) is the subject of a dispute over the amount or manner of cure pursuant to Section 12.2 hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time.

(b)    Any non-Debtor counterparty to an agreement being assumed hereunder that disputes (i) the amount of any cure payments; (ii) a Debtor's ability to provide adequate assurance of future performance; or (iii) any other matter pertaining to the assumption or assignment of such agreement must file with the Bankruptcy Court, and serve upon the Debtors, a written objection (an "Assumption Objection"), which objection shall set forth the basis for the dispute by no later than two (2) Business Days prior to the Confirmation Hearing.  If a non-Debtor counterparty fails to file and serve an Assumption Objection, the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtors, including the lack of any cure obligations.

(c)    Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of the assumption of executory contracts and unexpired leases as set forth in Section 12.1(a) pursuant to sections 365(a) and (b) of the Bankruptcy Code without further order of the Bankruptcy Court.

(d)    The Plan shall constitute a motion to assume or reject such executory contracts and unexpired leases set forth in Section 12.1(a), and the Debtors shall have no liability thereunder except as is specifically provided in the Plan.  The Debtors reserve the right to amend the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases on or prior to the Confirmation Date to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) and unexpired lease(s) shall be deemed to be, respectively, assumed or rejected by the Debtors pursuant to this Article XII; provided that the Debtors will provide the Committee notice of any amendment to the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases and the Committee shall have the right to object.  The Debtors shall

- 41 -

provide notice of any amendments to the Schedule of Rejected Executory Contracts and

Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases to the

parties to the executory contracts or unexpired lease affected thereby.  The listing of a document

on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of

Assumed Executory Contracts and Unexpired Leases shall not constitute an admission by the

Debtors that such document is an executory contract or that the Debtors have any liability

thereunder.  Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute

approval of the assumptions or rejections under this <u>Section 12.1</u> pursuant to section 365(a) of the

Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection or assumption is

in the best interests of the Debtors and their Estates.

(e)      Inclusion of a contract, lease or other agreement on the Schedule of Rejected

Executory Contracts and Unexpired Leases shall constitute adequate and sufficient notice that

(i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the

Plan; and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such

obligations, transactions, or undertakings relating thereto or arising thereunder.

**12.2    <u>Cure Claims.</u>**

Any Cure Claims under each executory contract and unexpired lease to be assumed under

this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment

of the cure amount listed on the Schedule of Assumed Executory Contracts and Unexpired Leases

in Cash on the Effective Date by the Disbursing Agent; or (b) on such other terms as agreed to by

the Disbursing Agent and the non-Debtor counterparty to such executory contract or unexpired

lease.  In the event a non-Debtor counterparty files an Assumption Objection, the cure payments

required by section 365(b)(1) of the Bankruptcy Code to such non-Debtor counterparty shall be

made following the entry of a Final Order resolving the dispute and approving assumption or

assignment, as applicable.

**12.3    <u>Claims Arising from Rejection, Expiration or Termination.</u>**

Claims created by the rejection of executory contracts and unexpired leases or the

expiration or termination of any executory contract or unexpired lease prior to the Confirmation

Date shall be Unsecured Claims and must be filed with the Bankruptcy Court and served on the Debtors or, if after the Effective Date, the Disbursing Agent: (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the order rejecting such executory contract or unexpired lease; or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date; or (ii) is rejected pursuant to the Plan, no later than thirty (30) days after the Confirmation Date.  Any such Claims for which a proof of claim is not filed and served by the deadlines set forth herein will be forever barred from assertion and shall not be enforceable against the Debtors or their Estates.  Except as provided in the Plan or otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Liquidating Trustee.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

**13.1**    **Scope of Retention of Jurisdiction.**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall, to the fullest extent permitted by law, retain and have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code; or (b) arising in or related to the Chapter 11 Case or the Plan including, the following:

(i)    To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (including the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

- 43 -

1    (ii)    To determine any and all adversary proceedings, applications, motions, and

2    contested or litigated matters that may be pending on the Effective Date or that, pursuant

3    to the Plan, may be instituted by the Disbursing Agent, the Liquidating Trustee or the

4    Debtors, as applicable, after the Effective Date, including such adversary proceedings,

5    applications, motions, and contested or litigated matters involving Trust Causes of Action;

6    (iii)    To hear and determine any objections to the allowance of Claims, whether

7    filed, asserted, or made before or after the Effective Date, including to hear and determine

8    any objections to the classification of any Claim and to allow, disallow or estimate any

9    Contested Claim in whole or in part;

10    (iv)    To issue such orders in aid of execution of the Plan to the extent authorized

11    or contemplated by section 1142 of the Bankruptcy Code;

12    (v)    To consider any modifications of the Plan, remedy any defect or omission,

13    or reconcile any inconsistency in any order of the Bankruptcy Court, including the

14    Confirmation Order;

15    (vi)    To hear and determine all Fee Applications and applications for allowances

16    of compensation and reimbursement of any other fees and expenses authorized to be paid

17    or reimbursed under the Plan or the Bankruptcy Code;

18    (vii)    To hear and determine all controversies, suits, and disputes that may relate

19    to, impact upon, or arise in connection with the Chapter 11 Cases, the Plan, the Focus

20    Liquidating Trust, the Plan Documents or their interpretation, implementation,

21    enforcement, or consummation, including any suits related the conduct of any of the

22    Debtors during or in respect of the Chapter 11 Cases;

23    (viii)    To hear and determine all controversies, suits, and disputes that may relate

24    to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the

25    Plan) or its interpretation, implementation, enforcement, or consummation;

26    (ix)    To the extent that Bankruptcy Court approval is required, to consider and

27    act on the compromise and settlement of any Claim or Cause of Action by, on behalf of,

28    or against the Estates;

- 44 -

(x)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor, the Liquidating Trustee or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)    To enter an order or final decree closing the Chapter 11 Cases;

(xiv)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xv)    To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

**13.2    <u>Failure of the Bankruptcy Court to Exercise Jurisdiction.</u>**

If the Bankruptcy Court abstains from exercising, or declines to exercise, or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in <u>Section 13.1</u> of the Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

- 45 -

**ARTICLE XIV.**

**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**14.1    Satisfaction of Claims.**

The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors, the Estates or any of their Assets.  Except as otherwise provided in the Plan, on the Effective Date, all Claims against the Debtors and their Estates shall be satisfied, discharged and released in full.  Except as otherwise provided in the Plan, all Persons shall be precluded and forever barred from asserting against Reorganized Focus, the Focus Entities, Ritter, the Estates and their respective Assets, any Claims or Causes of Action arising from any event, occurrence, condition, thing, act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

**14.2    Release of Liens.**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged.  Without limiting the foregoing, the Plan shall constitute a motion under section 522(f)(1)(A) of the Bankruptcy Code to avoid any judicial Liens encumbering any of Ritter's right, title and interest in and to the Principal Residence.  Upon entry of the Confirmation Order, all such Liens shall be avoided.

**14.3    Exculpation.**

**None of Reorganized Focus, the Focus Entities, the Committee, the Petitioning Creditors, Ritter or any of their respective affiliates, current and former officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals will have or incur any liability to any Person for any act or omission taking place on or prior to the Effective Date**

- 46 -

**in connection with, or arising out of, the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, the implementation or administration of the Plan or the property to be distributed under the Plan, <u>except</u> for willful misconduct or gross negligence as finally determined by the Bankruptcy Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.**

**14.4    <u>Discharge of Claims and Termination of Equity Interests.</u>**

Pursuant to section 1141(d) of the Bankruptcy Code, and <u>except</u> as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

Notwithstanding the forgoing, Ritter's discharge shall be automatically revoked and of no further force or effect if a court of competent jurisdiction enters a Final Order finding each of the following: (1) proceeds from the South Edge Settlement were transferred by any person or entity to a domestic or off-shore trust or similar device; (2) such proceeds exceed $100,000 in the aggregate; and (3) Ritter or his immediate family, including Lynn Hilary Westrom, is or was at

- 47 -

any time a beneficiary of such trust or similar device.  In the event Mr. Ritter's discharge is revoked, the releases of Mr. Ritter set forth in the Plan shall be null and void.

**14.5    Releases of Claims from Holders**.

As of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtor under the Plan and the Cash, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim or Membership Interest (solely in its capacity as such) that votes in favor of the Plan to the fullest extent permissible under law, will be deemed to forever release, waive and discharge all Claims in any way relating to the Debtors, the Chapter 11 Cases, the Estates, the Plan, the exhibits to the Plan and the Plan Supplement or the Disclosure Statement that such Person has, had or may have against any Released Party, **except** with respect to (a) any obligations arising under or in connection with the Plan or the Plan Documents, (b) or any act, event, injury, omission, transaction, or agreement arising after the Effective Date (other than Claims relating to such act, event, injury, omission, transaction or agreement first arising or occurring prior to the Effective Date), (c) any Claims against VTS Investments, LLP or Schettler and (d) any claims against any Prepack Entity.

**14.6    Releases by the Debtors**.

As of the Effective Date, the Debtors and the Reorganized Debtor, on behalf of themselves and their Affiliates, the Estates and their respective successors, assigns and any and all entities who may purport to claim by, through, for, or because of them, will forever release, waive and discharge all Claims that they have, or had against any Released Party **except**, that the claims released hereunder shall not under any circumstances include any claims or rights of the Debtors or their Estates (a) under the Plan or any Plan Documents, (b) against VTS Investments, LLP or Schettler and/or (c) against any Prepack Entity.

**14.7    Certain Releases by Ritter and Reorganized Focus**

As of the Effective Date, Ritter, Reorganized Focus, and the Released Parties, on behalf of themselves and their Affiliates will forever release, waive, and discharge any and

- 48 -

1  **all Claims against any holder of a Claim or Interest that votes in favor of the Plan to the**

2  **extent such Claims relate in any way to the Claims released by such holder under**

3  **Section 14.5 or released by Section 14.6 of the Plan.  Nothing in this section shall release any**

4  **Trust Causes of Action.**

5  **14.8    Injunctions.**

6  (a)    On the Effective Date and <u>except</u> as otherwise provided in the Plan, all Persons

7  who have been, are, or may be holders of Claims against the Debtors shall be permanently

8  enjoined from taking any of the following actions against or affecting Reorganized Focus, the

9  Focus Entities, Ritter, the Estates, the Assets, the Disbursing Agent or any of their current or

10  former respective members, directors, managers, officers, employees, agents, and professionals,

11  successors and assigns or their respective assets and property with respect to such Claims (other

12  than actions brought to enforce any rights or obligations under the Plan):

13  (i)    **commencing, conducting or continuing in any manner, directly or**

14  **indirectly, any suit, action or other proceeding of any kind (<u>including</u> all suits,**

15  **actions, and proceedings that are pending as of the Effective Date, which must be**

16  **withdrawn or dismissed with prejudice);**

17  (ii)    **enforcing, levying, attaching, collecting or otherwise recovering by any**

18  **manner or means, whether directly or indirectly, any judgment, award, decree or**

19  **order;**

20  (iii)    **creating, perfecting or otherwise enforcing in any manner, directly or**

21  **indirectly, any encumbrance; and**

22  (iv)    **asserting any setoff, right of subrogation or recoupment of any kind;**

23  **<u>provided</u>, that any defenses, offsets or counterclaims which the Debtors may have or**

24  **assert in respect of the above referenced Claims are fully preserved in accordance**

25  **with <u>Section 15.10</u>.**

26  (b)    **On the Effective Date, any and all Persons who have been, are, or may have**

27  **been holders of a Claim against the Debtors shall be permanently enjoined from asserting**

28  **any Cause of Action against any Person, entity, or trust, including, but not limited to, the**

- 49 -

**JAR Trust, which could have been asserted by the Estates against any such Person, entity, or trust in these Chapter 11 Cases and which are released or settled hereunder, including any Cause of Action for actual or constructive fraudulent transfer.**

(c)     Nothing in this Section shall enjoin any Person from pursuing any and all claims they may have against Schettler and/or VTS Investments, LLC or shall prevent any Person from enforcing their rights under the Plan or any Plan Document.

**14.9     VTS Adversary.**  Nothing in this Plan shall affect the ability of VTS to prosecute the VTS Adversary Proceeding or to collect any debt found to be non-dischargeable therein by a Final Order.

**14.10     No Effect on South Edge Settlement.**

Notwithstanding anything else provided herein, nothing in this Plan is or shall be construed as modifying, limiting, or otherwise affecting the rights of any Person in respect of the South Edge Settlement.

**ARTICLE XV.**

**MISCELLANEOUS PROVISIONS**

**15.1     Payment of Statutory Fees.**

All fees payable pursuant to 28 U.S.C. § 1930 prior to the Effective Date as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.   Thereafter, all fees payable pursuant to 28 U.S.C. § 1930 will be paid proportionately by (i) the Focus Liquidating Trust to the extent the fees are related to distributions to holders of Claims made from the Focus Liquidating Trust and (ii) Ritter and Reorganized Focus to the extent the fees are related to distributions made to holders of Claims by Ritter or Reorganized Focus.

**15.2     Notices.**

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when

- 50 -

1  actually delivered or, in the case of notice by facsimile transmission, when received and

2  telephonically confirmed, addressed as follows:

3

4           If to the Focus Entities:

5           Focus Property Group
            1635 Village Center Circle, Suite 100
6           Las Vegas, Nevada 89134
            Attn:  Tom DeVore
7
            With a copy to:
8
            White & Case LLP
9           555 S. Flower Street, Suite 2700
10          Los Angeles, California 90071
            Attn:  Roberto J. Kampfner, Esq.
11
            If to Ritter:
12
            Focus Property Group
13          1635 Village Center Circle, Suite 100
14          Las Vegas, Nevada 89134
            Attn:  John A. Ritter
15
            With a copy to:
16
            White & Case LLP
17          555 S. Flower Street, Suite 2700
18          Los Angeles, California 90071
            Attn:  Roberto J. Kampfner, Esq.
19

20          If to the Committee:

21          Committee of Unsecured Creditors of John Ritter and the Focus Entities
22          Garman Turner Gordon
            650 White Drive, Suite 100
23          Las Vegas, Nevada 89119
            Attn:  William Noall, Esq.
24
            With a copy to:
25          Multibank 2009-1 RES-ADC Venture LLC
26          Andersen Law Firm, Ltd.
            101 Convention Center Drive, Suite 600
27          Las Vegas, Nevada 89109

28
                                    - 51 -

**15.3    Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitutes a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**15.4    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Nevada, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

**15.5    Expedited Determination.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**15.6    Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, Lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**15.7    Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

**15.8    Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by

- 52 -

the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**15.9    Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code; provided further that the Debtors may not modify any provision of the Plan that affects the Focus Liquidating Trust or the settlement of the JAR Trust Causes of Action without the Committee's consent.  The Debtors, may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  The Debtors must obtain the written consent of the Committee for any modification of the Plan that affects the Focus Liquidating Trust or the settlement of the JAR Trust Causes of Action.

**15.10   Setoff Rights.**

In the event that a Debtor has a Claim of any nature whatsoever against the holder of an Administrative Claim, Tax Claim, Priority Claim, Focus Entity Secured Claim, Unsecured Claim or Subordinated Claim, in each case against such Debtor accruing prior to the Effective Date, then the Disbursing Agent may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) against such Debtor's claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.  Neither the failure to set off nor the allowance of any Claim under the Plan

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A.
RITTER AND THE FOCUS ENTITIES DATED JULY 12, 2017**

1   shall constitute a waiver or release of any Claims that a Debtor may have against the holder of

2   any Claim.

3   **15.11   Compliance with Tax Requirements.**

4           In connection with the Plan, the Debtors and the Disbursing Agent, as applicable, shall

5   comply with all withholding and reporting requirements imposed by federal, state, local, and

6   foreign taxing authorities and all Plan Distributions hereunder shall be subject to such

7   withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed

8   Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the

9   satisfaction and payment of any tax obligations imposed by any government unit, underlining including

10  income, withholding and other tax obligations, on account of such Plan Distribution.  The

11  Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such

12  holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax

13  obligations.

14  **15.12   Binding Effect.**

15          The Plan shall be binding upon the Debtors, the holders of all Claims and all parties in

16  interest and their respective successors and assigns.  To the extent any provision of the Disclosure

17  Statement or any other solicitation document may be inconsistent with the terms of the Plan, the

18  terms of the Plan shall be binding and conclusive.

19  **15.13   Severability.**

20          **IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY**

21  **PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS**

22  **APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTORS MAY MODIFY THE**

23  **PLAN IN ACCORDANCE WITH SECTION 15.9 SO THAT SUCH PROVISION SHALL**

24  **NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR**

25  **TRANSACTION.  SUCH A DETERMINATION OF UNENFORCEABILITY SHALL**

26  **NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF**

27  **ANY OTHER PROVISION OF THE PLAN; OR (B) REQUIRE THE RESOLICITATION**

28  **OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.  THE DEBTORS MUST**

- 54 -

1  OBTAIN THE WRITTEN CONSENT OF THE COMMITTEE, OR THE FOCUS

2  LIQUIDATING TRUST IF THE COMMITTEE HAS BEEN DISSOLVED, FOR ANY

3  MODIFICATION OF THE PLAN THAT AFFECTS THE FOCUS LIQUIDATING

4  TRUST OR THE SETTLEMENT OF THE JAR TRUST CAUSES OF ACTION.

5  **15.14   No Admissions.**

6       AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER

7  CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL

8  NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR

9  LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE

10  IN SETTLEMENT NEGOTIATIONS.  UNLESS AND UNTIL THE EFFECTIVE DATE

11  HAS OCCURRED, THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-

12  BANKRUPTCY PROCEEDING.  UNDER NO CIRCUMSTANCE SHALL THIS PLAN

13  BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND

14  OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST

15  THE DEBTORS AND DEBTORS IN POSSESSION IN THE CHAPTER 11 CASES.

16  **15.15   Termination of the Committee; Deemed Existence for Certain Limited Purposes.**

17       On the Effective Date, the Committee shall dissolve, and the members thereof shall be

18  released and discharged from all duties and obligations arising from or related to their

19  membership, provided, however, that (1) the Committee shall continue in existence and its

20  Professionals shall continue to be retained with respect to any applications for allowance of

21  compensation and reimbursement of expenses pending on the Effective Date or filed and served

22  after the Effective Date pursuant to the terms of the Plan and (2) the Focus Liquidating Trust shall

23  be deemed the successor to the Committee with respect to any motions seeking to enforce the

24  Plan and the transactions contemplated hereunder or the Confirmation Order and any pending

25  appeals and related proceedings.  The Professionals retained by the Committee and the respective

26  members thereof shall not be entitled to assert any Fee Claims for any services rendered or

27  expenses incurred on behalf of the Committee after the Effective Date, except for fees for time

28  spent and expenses incurred: (1) in connection with any applications for allowance of

- 55 -

1    compensation and reimbursement of expenses pending on the Effective Date or filed and served

2    after the Effective Date pursuant to the terms of the Plan; (2) in connection with any motion or

3    application to amend and/or reconsider the Confirmation Order; or (3) in connection with any

4    appeal pending as of the Effective Date, including any appeal of the Confirmation Order.

5    **15.16  Further Assurances.**

6              Each of the Debtors, the Committee, the Focus Liquidating Trust, and the Liquidating

7    Trustee shall cooperate fully in the implementation of the Plan and execute such further

8    instruments, documents and agreements and give such further written assurances as may be

9    reasonably requested by any of them to evidence and reflect the transactions described herein and

10   contemplated hereby and to carry into effect the intents and purposes of this Plan and the other

11   agreements and documents related hereto.  Without limiting the generality of the foregoing, Ritter

12   shall provide cooperation to the Focus Liquidating Trust and the Liquidating Trustee as necessary

13   to permit them to perfect Liens granted or contemplated to be granted pursuant to this Plan and

14   the Focus Liquidating Trust and the Liquidating Trustee shall provide cooperation to Ritter as

15   necessary to discharge such Liens upon satisfaction of the obligations secured thereby.

16                                    *[Signature Page to Follow]*

17

18

19

20

21

22

23

24

25

26

27

28

1

2    Dated: July [●], 2017
     Las Vegas, Nevada

3

4

By: _____
     John A. Ritter

**THE FOCUS ENTITIES, OTHER THAN
VICTOR INVESTMENTS, LP**

By Focus Investment Manager, LLC

By: _____
     John A. Ritter
     Manager

**VICTOR INVESTMENTS, L.P.**

By: _____
     Thomas DeVore
     General Partner

**SCHWARTZ FLANSBURG PLLC**

By:  /s/ Samuel Schwartz
       Samuel A. Schwartz (NV Bar 10985)
       sam@nvfirm.com
     Bryan A. Lindsey (NV Bar 10662)
     bryan@nvfirm.com
     6623 Las Vegas Boulevard South, Suite 300
     Las Vegas, NV 89119
     Telephone:      (702) 385-5544
     Facsimile:       (702) 385-2741

—and—

**WHITE & CASE LLP**
Roberto J. Kampfner (CA Bar 179026)
rkampfner@whitecase.com
Andrew Mackintosh (CA Bar 266772)
amackintosh@whitecase.com
Aaron Colodny (CA Bar 293510)
aaron.colodny@whitecase.com
555 South Flower Street, Suite 2700
Los Angeles, CA  90071
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329

*Attorneys for the Debtors*

- 1 -

**EXHIBIT A**

**GLOSSARY OF DEFINED TERMS**

1.    "2015 Tax Refund" means Cash in the amount of $203,461.43 reflecting a tax refund received by Ritter on or about March 21, 2017.

2.    "Additional Tax Refund" means Cash in the amount of $48,015.23 reflecting a tax refund received by Ritter on or about May 1, 2017.

3.    "Advisory Board" has the meaning set forth in Section 7.4(b)(iii).

4.    "Accepting Secured Class Causes of Action" means all Causes of Action of the Estates against the holder of any Focus Entity Secured Claim classified in a Class that has accepted the Plan to the extent such causes of action are related to such holder's Focus Entity Secured Claim.

5.    "Administrative Claim" means a Claim incurred by the Debtors (or their Estates) on or after the Relief Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Case entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code.

6.    "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

7.    "Allowance" means the process by which a Claim may become Allowed.

8.    "Allowed," when used

(a) with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; and

(b) with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in the Plan.

9.    "Assets" means, all of the Debtors' rights, title and interests of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

10.    "Assumption Objection" has the meaning set forth in Section 12.1(b) of the Plan.

- 1 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER
AND THE FOCUS ENTITIES DATED JULY 6, 2017**

11.     "<u>Avoidance Actions</u>" means all Causes of Action of the Estates that arise under or are otherwise made applicable in the Chapter 11 Cases pursuant to chapter 5 of the Bankruptcy Code.

12.     "<u>Backstop Amount</u>" means (a) $6,178,000 plus (b) twenty-five (25%) percent of the scheduled value of all Collateral to Be Sold based on the schedule of values provided to the mediator in connection with the mediation that occurred between the Debtors and the Committee in the Chapter 11 Cases; <u>provided</u>, <u>that</u> the total Backstop Amount shall not exceed $8,710,000.

13.     "<u>Backstop Notice</u>" means a writing sent by certified USPS mail from the Liquidating Trustee to Ritter on or after the fifth (5th) anniversary of the Effective Date notifying Ritter of the amount of the Backstop Payment and providing an accounting in respect thereof.

14.     "<u>Backstop Payment</u>" means the amount, if any, by which the Backstop Amount exceeds the amount of proceeds actually received by the Focus Liquidating Trust from the liquidation of the Focus Assets (including the Collateral to Be Sold) and the Non-Exempt Assets as of the fifth (5th) anniversary of the Effective Date.

15.     "<u>Bankruptcy Code</u>" means title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

16.     "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Nevada, or such other court having jurisdiction over the Chapter 11 Case.

17.     "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to 28 U.S.C. § 2075 and as applicable to the Chapter 11 Cases.

18.     "<u>Bonita Cougar Claims</u>" means the claims asserted by Bonita Cougar, LLC against Succotash, LLC and Ritter.

19.     "<u>Business Day</u>" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in Las Vegas, Nevada.

20.     "<u>Cash</u>" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

- 2 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER**
**AND THE FOCUS ENTITIES DATED JULY 6, 2017**

21.     "Cash Collateral Account" has the meaning set forth in Section 7.3(i).

22.     "Causes of Action" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

23.     "CD Collateral" means any Certificates of Deposit issued by the CD Lender and held by the JAR Trust securing Personal Secured Claims and certain other indebtedness.

24.     "CD Lender" means Capital Security Bank, Ltd., a financial institution organized under the laws of the Cook Islands.

25.     "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to the Debtors.

26.     "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of a Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries and/or damages are manifested; or (c) at the time of or prior to the Effective Date, the Debtor has received one or more demands for payment for injuries or damages arising from such acts or omissions.

- 3 -

27.    "Class A Liquidating Trust Beneficial Interests" shall mean those certain Class A Beneficial Interests issued in the Focus Liquidating Trust in connection with, and subject to, the Plan, the Confirmation Order, and the Liquidating Trust Declaration.

28.    "Class B Liquidating Trust Beneficial Interests" shall mean those certain Class B Beneficial Interests issued in the Focus Liquidating Trust in connection with, and subject to, the Plan, the Confirmation Order, and the Liquidating Trust Declaration.

29.    "Cobalt Series Recovery Right" means the right to receive thirty percent (30%) of the net proceeds to which Spin Holdings, LLC, Cobalt Series is entitled from a recovery on the V5 Claims.  An assignment of the Cobalt Series Recovery Right will be attached to the Plan Supplement.

30.    "Collateral" means the Assets of a Focus Entity securing a Focus Entity Secured Claim.

31.    "Collateral to Be Sold" means Collateral securing Focus Entity Secured Claims classified in a class that has accepted the Plan.

32.    "Clydesdale" means Clydesdale Investments, LLC, a Nevada limited liability company.

33.    "Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases.

34.    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

35.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

36.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

37.    "Contested" when used with respect to a Claim, means such Claim (a) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (b) if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the

- 4 -

Bankruptcy Court, to the extent (i) the proof of claim amount exceeds the amount indicated in the Schedules; or (ii) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; (c) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; or (d) as to which an objection has been filed on or before the Effective Date; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim.

38.    "Cure Claims" means the amount under each executory contract and unexpired lease to be assumed under this Plan that must be paid pursuant to section 365(b)(1) of the Bankruptcy Code.

39.    "Debtors" means, collectively, the Focus Entities and John A. Ritter.

40.    "Debtor in Possession" means a Debtor, in its capacity as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

41.    "DIP Claims" means all Claims under that certain Debtor in Possession Credit Agreement to be executed between the DIP Lender and the Debtors.

42.    "DIP Lender" means FIG in its capacity as debtor in possession lender.

43.    "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

44.    "Disbursing Agent" means any Person acting in their capacity as the Disbursing Agent under this Plan.

45.    "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules thereto.

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 6, 2017**

46.    "<u>Effective Date</u>" means a date selected by the Debtors, which shall be a Business Day that is no later than five (5) Business Days after all of the conditions specified in <u>Section 11.1</u> and <u>Section 11.2</u> have been satisfied or waived (to the extent waivable).

47.    "<u>Equity Interests</u>" means, the membership interests in the Focus Entities existing prior to the Effective Date.

48.    "<u>Estates</u>" means the estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

49.    "<u>Exempt Assets</u>" means, collectively, (a) all of the Assets of Ritter listed as exempt on Schedule C of his *Amended Individual Schedules* [D.I. 583]; (b) Ritter's rights to manage Focus Investment Manager, LLC, RHM, LLC and FIG (but not the FIG Economic Interest, which shall inure to the Focus Liquidating Trust and shall be deemed Liquidating Trust Property), (c) the proceeds of the Focus Agreement; (d) the Principal Residence; and (e) $100,000 of the 2015 Tax Refund.

50.    "<u>Existing HW 2014 Notes</u>" means all promissory notes issued on or before the Effective Date by the HW 2014 Irrevocable Trust to Clydesdale.

51.    "<u>FCG</u>" means Focus Commercial Group, Inc., a company organized under the laws of Nevada.

52.    "<u>Fee Claim</u>" means a Claim of a Professional Person.

53.    "<u>FIG</u>" means Focus Investment Group, LLC, a Nevada limited liability company.

54.    "<u>FIG Economic Interest</u>" means Mr. Ritter's economic interest in FIG <u>other than</u> any economic value attributable to the Focus Agreement.

55.    "<u>FIG Equity Interests</u>" means the Equity Interests held by FIG in the Focus Entities.

56.    "<u>Final Order</u>" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy

- 6 -

Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

57.    "FNBNR1 Claims" means all claims against the Debtors held by FNBNR1 Acquisitions, LLC.

58.    "Focus Agreement" has the meaning set forth in Section 7.4(e).

59.    "Focus Assets" means the Assets of the Focus Entities prior to the Effective Date, including, but not limited to, all cash, personal property, and the Assets listed on Schedule 2 and the bank accounts listed on Schedule 6 hereto.

60.    "Focus Entities" means all of the Debtors other than Ritter, including the Persons listed on Schedule 1 hereto.

61.    "Focus Entity Secured Claims" means all Claims against the Focus Entities secured by a Lien upon Focus Assets, except for FNBNR1 Claims and Bonita Cougar Secured Claims.

62.    "Focus ICW Settlement Parties" means Mountain's Edge, Cliffs Edge, LLC, Southern Peak, LLC, Mustang Trust, Ritter, Holdings Manager, LLC, Las Vegas Properties, LLC, VTS Investments, LP and Schettler.

63.    "Forest Mountain Collateral" means the real property located at 2112 Forest Mountain Road, Prescott, AZ 86303

64.    "Gap Claims" means a Claim against Ritter that is of a kind specified in section 507(a)(3) of the Bankruptcy Code.

65.    "Glossary of Defined Terms" means this Exhibit A to the Plan.

66.    "HW 2014 Irrevocable Trust" is that certain Nevada irrevocable trust titled HW 2014 Irrevocable Trust dated April 8, 2014.

- 7 -

67.     "HW 2014 Liquidating Trust Note" shall have the meaning set forth in Section 7.3(c) hereof.

68.     "HW 2014 Notes Intercreditor Agreement" shall have the meaning set forth in Section 7.4(d) hereof.

69.     "ICW" means Insurance Company of the West, a California corporation.

70.     "ICW Claims" means the Claims of ICW against Ritter pursuant to the ICW Settlement Agreement.

71.     "ICW Payment Event" means the failure of any Focus ICW Party (other than Ritter) to make a payment required by the ICW Settlement Agreement.

72.     "ICW Settlement Agreement" means that certain Settlement Agreement dated as of March 22, 2016, by and between ICW and the Focus ICW Settlement Parties.

73.     "JAR Causes of Action" means all Claims and Causes of Action of the Debtors and their Estates of any kind or nature whatsoever against any Released Party, including, but not limited to, any and all Claims and Causes of Action consisting of or relating to: (1) any Avoidance Actions against any Person for the purpose of seeking (a) the avoidance of any transfer of assets to the JAR Trust or its Affiliates by Ritter or any Affiliate thereof, including pursuant to Sections 544, 547, 548, 549 and/or 550 of the Bankruptcy Code, (b) the repatriation of any assets of the JAR Trust to the United States or any other country, or (c) the alternation, modification or dissolution of the JAR Trust in any manner whatsoever; (2) the creation or funding of the JAR Trust; (3) the creation or funding of Clydesdale; (4) the creation or funding of Arbor Holdings, LLC; (5) the administration of the JAR Trust or any of its affiliates, including the Released Parties, and/or agents thereof, including all claims relating to any loans made by the JAR Trust or any affiliate thereof to any Released Party; (6) any relief otherwise seeking to alter, modify, or dissolve the JAR Trust or the Released Parties or otherwise seeking to interfere with their respective businesses in any manner whatsoever; (7) the creation, funding, or administration of the HW 2014 Irrevocable Trust or any of its subsidiaries or Affiliates; (8) the creation, funding, or administration of the Quad Trust or any of its subsidiaries or Affiliates; and/or (9) the creation,

- 8 -

funding, or administration of the JS NV 2009 Irrevocable Trust or any of its subsidiaries or affiliates.

74.    "JAR Trust" means the JAR Trust established on October 5, 2007 under the laws of the Cook Islands.

75.    "JAR Settlement Amount" means $5,000,000.

76.    "JS NV 2009 Agreement"  means an agreement between the Focus Liquidating Trust and the trustee of the JS NV 2009 Irrevocable Trust evidencing the obligations of the JS NV 2009 Trust to make distributions to the Focus Liquidating Trust pursuant to Section 7.3(g) and Section 7.3(h) of the Plan, the form of which shall be attached to the Plan Supplement

77.    "JS NV 2009 Irrevocable Trust" is that certain Nevada irrevocable trust entitled JS NV 2009 Irrevocable Trust dated January 11, 2010.

78.    "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

79.    "Life Insurance Policies" means the life insurance policies identified on Schedule 4 to the Plan.

80.    "Focus Liquidating Trust" means the liquidating trust created pursuant to the Liquidating Trust Declaration.

81.    "Liquidating Trustee" means the Person selected to serve as the trustee under the Liquidating Trust Declaration.

82.    "Liquidating Trust Beneficial Interests" means, collectively, the Class A Liquidating Trust Beneficial Interests and the Class B Liquidating Trust Beneficial Interests to be distributed pursuant to the Plan.

83.    "Liquidating Trust Declaration" means the declaration of trust to be entered into by the Debtors and the Liquidating Trustee on the Effective Date.  The Liquidating Trust Declaration shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

84.    "Liquidating Trust Property" means all of the assets that are to be transferred to the Focus Liquidating Trust under the terms of the Plan, including the Focus Assets, the Non-Exempt Assets, the Remaining Cash Amount, the Ritter Note, the HW 2014 Liquidating Trust

- 9 -

Note, the Cobalt Series Recovery Right, the Trust Causes of Action, and any Net Proceeds thereof.

85.    "Local Rules" means the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court District of Nevada.

86.    "Mountain's Edge" means Mountain's Edge, LLC, a Nevada limited liability company.

87.    "Multibank" means Multibank 2009-1 RES-ADC Venture, LLC.

88.    "Multibank Allowed Secured Claim" means Proof of Claim No. 253 filed by Multibank against PV Land Investments, LLC to the extent such Claim is secured by the Multibank Property; provided that such Claim shall not exceed $19,868,765.94. The Multibank Allowed Secured Claim shall be classified in Class 7.

89.    "Multibank Property" means the property identified in the Nye County register as APN Nos. 47-011-05, 47-011-08, 47-011-09, 47-011-10 and water rights that comprise a total of 203.3 acre feet annual duty with a prorated diversion rate being a portion of the total duty under supplemental Permits 13959 (Certificate 5437), 14458 (Certificate 5438), and Permit 68981.

90.    "Multibank Allowed Unsecured Claim" means Proof of Claim No. 252 filed by Multibank against Ritter to be Allowed in the amount set forth in Section 7.14.  The Multibank Unsecured Claim shall be classified in Class 10.

91.    "Net Proceeds" means, with respect to the sale of Collateral, the remaining proceeds of such sale after the payment of any direct reasonable costs of sale.

92.    "NOL Election Refund" means Cash in the amount of $991,434.96 received by Ritter in 2017 resulting from the application of past net operating losses.

93.    "Non-Exempt Assets" means all of the Assets of John A. Ritter other than the Exempt Assets.  The Non-Exempt Assets include, but are not limited to, those listed hereto on Schedule 5 and the bank accounts listed under Mr. Ritter's name on Schedule 6.

94.    "Non-FIG Equity Interests" means all Equity Interests in the Focus Entities other than FIG Equity Interests.

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 6, 2017**

95.    "Non-Recourse Guarantee" means the non-recourse guarantee of the Ritter Note and the Backstop Amount issued by Nevada Acquisitions, LLC in favour the Focus Liquidating Trust, which shall by in a form attached to the Plan Supplement.

96.    "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court on the Effective Date and mailed to holders of Claims by the claims, noticing, and balloting agent appointed in the Chapter 11 Case pursuant to 28 U.S.C. § 156(c).

97.    "Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 10.1 of the Plan.

98.    "Other Collateral" means Collateral securing Focus Entity Secured Claims classified in a class that has rejected the Plan.

99.    "Outstanding Bonds" has the meaning set forth in the ICW Settlement Agreement.

100.    "Outstanding Premium Amount" has the meaning set forth in the ICW Settlement Agreement.

101.    "Permitted Liens" means, all Liens on the Ritter Backstop Collateral and the Ritter Note Collateral that were valid, perfected, non-avoidable and fully enforceable on the Relief Date other than (a) any such Liens in favor of (i) the CD Lender, (ii) Clydesdale or (iii) any other Person or entity that is an Affiliate of the Debtors and (b) any statutory liens which by law have priority over the Liens to be granted to the Focus Liquidating Trust pursuant to the Plan Documents and this Plan, including liens for property taxes and similar assessments.

102.    "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

103.    "Petitioning Creditors" means Multibank, PWB, SV Litigation SPE, LLC and the creditors led by Builders Capital, Inc. that joined the involuntary chapter 7 petition against Mr. Ritter [D.I. 74].

- 11 -

1    104.    "Personal Secured Claims" means Claims secured by Assets of Ritter or the

2 Mustang Trust other than the Principal Residence, including the Claims listed on Schedule 3

3 hereto.

4    105.    "Petition Date" means, with respect to John A. Ritter, February 29, 2016, and with

5 respect to the Focus Entities, June 17, 2016.

6    106.    "Plan" means this chapter 11 plan, either in its present form or as it may be

7 amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules

8 hereto, as the same may be in effect at the time such reference becomes operative.

9    107.    "Plan Distribution" means the payment or distribution under the Plan of Cash,

10 Assets, securities or instruments evidencing an obligation under the Plan to the holder of an

11 Allowed Claim.

12    108.    "Plan Distribution Date" means (a) with respect to an Administrative Claim, Tax

13 Claim or Priority Claim the earlier of: (i) the Effective Date or a date that is as soon as reasonably

14 practicable after the Effective Date, if such Claim is then an Allowed Claim; or (ii) a date that is

15 as soon as reasonably practicable after the date such Claim becomes Allowed, if not Allowed on

16 the Effective Date and (b) with respect to a Focus Entity Secured Claim, Unsecured Claim or

17 Subordinated Claim, such time as the Liquidating Trustee, in its reasonable discretion, determines

18 that it is prudent to make such distribution.

19    109.    "Plan Documents" means the material documents required to implement the

20 provisions of the Plan including the Liquidating Trust Declaration, the Ritter Note, the HW 2014

21 Trust Note, the HW 2014 Intercreditor Agreement, the Focus Agreement, an assignment of the

22 Life Insurance Policies recorded with the issuer of the Life Insurance Policies, the Non-Recourse

23 Guarantees, the deeds of trust and assignment of rents with respect to the Ritter Real Estate

24 Collateral and Forest Mountain Collateral, and the JSNV Agreement.

25    110.    "Principal Residence" means Ritter's principal residence located at 8575 W.

26 Washburn Road in Las Vegas, Clark County, Nevada, comprised of the land commonly known as

27 such address, the improvements thereon, and all associated water and other rights.

28

- 12 -

111.    "<u>Principal Residence Secured Claims</u>" means Claims secured by the Principal Residence.

112.    "<u>Priority Claim</u>" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Claims, Gap Claims, or Tax Claims.

113.    "<u>Prepack Class B Membership Interests</u>" means the Class B Membership Interests in the Prepack Entities

114.    "<u>Prepack Entities</u>" means the entities identified as such on <u>Schedule 2</u> hereto.

115.    "<u>Pro Rata Share</u>" means, with respect to any Claim or Equity Interest, the proportion that the amount of that Claim or Equity Interest, as the case may be, in a particular class or group of classes bears to the aggregate amount of all Claims (including Contested Claims) or Equity Interests, as the case may be, in such class or group of classes.

116.    "<u>Professional Person</u>" means a Person retained or to be compensated for services rendered or costs incurred on or after the Relief Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

117.    "<u>PWB</u>" means Pacific Western Bank.

118.    "<u>PWB Allowed Unsecured Claims</u>" means Proof of Claim No. 93 filed by PWB against Ritter in the amounts stated therein, subject to adjustments as set forth in Section 7.15 of this Plan.  The PWB Allowed Unsecured Claim shall be classified in Class 10.

119.    "<u>PWB Purported Collateral</u>" means the residences and real estate located at 1959 Forrest Hills Road, Prescott Arizona 86303 and 1980 Sherwood, Prescott, Arizona 86303.  Under no circumstances shall the PWB Purported Collateral include the Principal Residence.

120.    "<u>PWB Secured Claim</u>" means the Claims of PWB set forth in Proof of Claim No. 93 to the extent the Bankruptcy Court determines that such Claims are secured by the PWB Purported Collateral.

121.    "<u>Released Party</u>" means, each Debtor, the accountants, attorneys and other professionals of the Debtors, each manager of the Focus Entities and its managers, the JAR Trust,

- 13 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER AND THE FOCUS ENTITIES DATED JULY 6, 2017**

the past and present trustees of the JAR Trust, the past and present protectors of the JAR Trust, Ms. Hilary Westrom, each beneficiary of the JAR Trust, FNBNR1 Acquisitions, LLC and its members, managers and affiliates, FIG, the JS NV 2009 Irrevocable Trust and each of its Affiliates, including Return Holdings, LLC, Spoke Holdings, LLC, Wheel Holdings, LLC, Yavapai, LLC, and Motley Returns, LLC, the Quad Irrevocable Trust and each of its Affiliates, including Spin Holdings, LLC, the HW 2014 Irrevocable Trust and its Affiliates, including Thousand Lakes, LLC, Core TGLV, LLC and TGIG, LLC and each of their respective affiliates, attorneys, trustees, partners, employees, beneficiaries, and managers.  Notwithstanding any of the foregoing, the Released Parties do not include VTS Investments, LLP or Schettler.

122.    "Relief Date" means, with respect to the Chapter 11 Cases of the Focus Entities, June 17, 2016, and, with respect to the case of John A. Ritter, June 22, 2016.

123.    "Remaining Cash Amount" means the amount of the JAR Settlement Amount, NOL Election Refund, Additional Tax Refund, the 2015 Tax Refund (other than $100,000 of the 2015 Tax Refund) and any other tax refund for any period based upon a tax attribute existing prior to the Effective Date remaining after the payment of Administrative Claims, Priority Claims, Gap Claims, and Tax Claims pursuant to the Plan.

124.    "Reorganized Focus" has the meaning set forth in Section 7.2(a).

125.    "Reorganized Focus Company Agreement" means the limited liability agreement of Reorganized Focus that shall be in effect on and after the Effective Date.

126.    "Ritter" means John A. Ritter, a Debtor in the Chapter 11 Cases.

127.    "Ritter Backstop Collateral" means the Life Insurance Policies and Ritter Real Estate Collateral identified on Schedule 4 to the Plan and Ritter's beneficial interest in the JS NV 2009 Irrevocable Trust.

128.    "Ritter Real Estate Collateral" means the real estate identified on Schedule 4 to the Plan.

129.    "Ritter Note" means a promissory note in a principal amount of $2,000,000 from Ritter to the Focus Liquidating Trust.  A Form of Ritter Note will be attached to the Plan Supplement and shall constitute a Plan Document.

- 14 -

130. "Ritter Note Collateral" means the Ritter Backstop Collateral and Forest Mountain Collateral.

131. "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule to be filed by the Debtors with the Bankruptcy Court as part of the Disclosure Statement, as may from time to time be amended at any time prior to the commencement of the Confirmation Hearing, identifying each contract and lease the Debtors seek to reject pursuant to Section 12.1 of the Plan.

132. "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule to be filed by the Debtors with the Bankruptcy Court as part of the Disclosure Statement, as may from time to time be amended at any time prior to the commencement of the Confirmation Hearing, (i) identifying each contract and lease the Debtors seek to assume pursuant to Section 12.1 of the Plan; and (ii) the Debtors' proposed cure amount in respect of each contract and lease identified in such schedule, if any.

133. "Schedules" means the schedules of assets and liabilities and list of equity interests and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors in Possession from time to time.

134. "Schettler" means Vincent T. Schettler, an individual.

135. "Secured Tax Claims" means any secured Claim asserted against the Debtors by any taxing authority.

136. "Slusher Claims" means all Claims against Ritter and any other Debtor evidenced by the judgment entered by the District Court for Clark County, Nevada in Case No. A-11-637783-C.

137. "South Edge Settlement" means that certain Settlement and Mutual Release Agreement, dated October 17, 2011, approved in the case styled *In re South Edge, LLC* (Bankr. D. Nev. Case No. 10-32968-bam).

- 15 -

138.    "Subordinated Claims" means, collectively, all Claims that have been subordinated to one or more Unsecured Claims either by agreement or pursuant to section 510 of the Bankruptcy Code.  For avoidance of doubt, Subordinated Claims include the VTS Claims to the extent that the Bankruptcy Court determines that such Claims should be subordinated under section 510 of the Bankruptcy Code during the claims allowance process.  Subordinated Claims shall not include the Slusher Claims, which shall be deemed to be Unsecured Claims.

139.    "Tax Claim" means a Claim against a Debtor that is of a kind specified in section 507(a)(8) of the Bankruptcy Code, other than a Secured Tax Claim constituting a property tax.

140.    "Trust Causes of Action" means, collectively, all Causes of Action of the Debtors and their Estates, including any Avoidance Actions and Causes of Action against holders of Liens in Other Collateral and/or Focus Entity Secured Claims classified in a class that rejected the Plan; provided, that (i) Causes of Action expressly settled under the Plan, including all JAR Trust Causes of Action and Accepting Secured Class Causes of Action, (ii) Causes of Action against all Released Parties, and (iii) Causes Action relating to any Exempt Assets shall not constitute Trust Causes of Action.

141.    "Unsecured Claim" means any Claim against a Debtor other than an Administrative Claim, a Priority Claim, a Gap Claim, a Tax Claim, the Focus Entity Secured Claim, a Personal Secured Claim, an ICW Claim or a Subordinated Claim.

142.    "Voting Deadline" means [_____].

143.    "V5 Claims" are the claims held by V5, LLC related to its data center project.

144.    "VTS Adversary Proceeding" means the adversary proceeding styled *VTS Investments LLP v. Ritter*, Adv. Pro. No. 16-01114-btb.

145.    "VTS Claims" means any and all Claims that have or could have been asserted against Ritter and any other Debtor in the proceedings styled *VTS Investments LLP v. John A. Ritter*, et al., currently pending in the District Court for Clark County, Nevada Case No. A-12-674306-C.

Americas 91767208 v28

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER**
**AND THE FOCUS ENTITIES DATED JULY 6, 2017**

**Schedule 1**

**Focus Entities**

1. Cliff Rose Investments, LLC, a Nevada limited liability company

2. JV Properties, LLC, a Nevada limited liability company

3. NGA#2, LLC, a Nevada limited liability company

4. PV Land Investments, LLC, a Nevada limited liability company

5. Saguaro Equities, LLC, a Nevada limited liability company

6. Succotash, LLC, a Nevada limited liability company

7. Southwest Desert Equities, LLC, a Nevada limited liability company

8. Victor Investments, L.P, a Nevada limited partnership

9. Northwest Investments, LLC, a Nevada limited liability company

10. Agave Properties, LLC, a Nevada limited liability company

11. Focus South Group, LLC, a Nevada limited liability company

12. FSG-S, LLC, a Delaware limited liability company

- 1 -

**Schedule 2**

**Focus Assets**

| Real Property Held By Focus Entities | | | |
|---|---|---|---|
| Focus Entity | Location | APN | Acres |
| Cliffrose Investment, LLC | Kingman, AZ | 306-02-202A<br>306-12-214A<br>306-12-214B<br>339-20-217<br>339-10-189<br>339-10190<br>339-08-149<br>339-08-150<br>339-12-227<br>339-17-224<br>339-19-223 | 380 |
| JV Properties, LLC[1] | Sandy Valley, NV | 219-04-701-001 | 29.9 |
| JV Properties, LLC[1] | Sandy Valley, NV | 219-09-101-003 | 4.7 |
| JV Properties, LLC[1] | Sandy Valley, NV | 219-09-110-027 | 2.4 |
| NGA #2, LLC | Victorville, CA | 3133-061-03 | 2.5 |
| NGA #2, LLC | Victorville, CA | 3097-421-01 | 20 |
| NGA #2, LLC | Victorville, CA | 3097-471-02 | 75 |
| NGA #2, LLC | Victorville, CA | 3096-251-06 | 10 |
| NGA #2, LLC | Victorville, CA | 3133-091-05<br>3133-091-06 | 10 |
| NGA #2, LLC | Victorville, CA | 3133-081-03 | 10 |
| NGA #2, LLC | Victorville, CA | 3133-061-10 | 2.5 |
| NGA #2, LLC | Victorville, CA | 3133-171-07 | 5 |
| NGA #2, LLC | Victorville, CA | 3133-111-02<br>3133-111-06 | 10 |

---

[1] Property is held by Juniper Vail, LLC.  JV Properties, LLC owns 100% of membership interests in Juniper Vail, LLC.

- 1 -

| Real Property Held By Focus Entities | | | |
|---|---|---|---|
| Focus Entity | Location | APN | Acres |
| PV Land Investments, LLC | Victorville, CA | 47-041-11<br>47-041-13<br>47-041-18<br>47-041-19<br>47-041-20 | 65 |
| PV Land Investments, LLC | NW Las Vegas, NV | 47-021-12 | 32 |
| PV Land Investments, LLC | NW Las Vegas, NV | 47-011-05<br>47-011-08<br>47-011-09<br>47-011-10 | 80.9 |
| PV Land Investments, LLC | NW Las Vegas, NV | 47-041-08 | 142.4 |
| Succotash, LLC | Sandy Valley, NV | 219-22-101-007 | 2.5 |
| Succotash, LLC | Sandy Valley, NV | 219-22-101-013 | 2.5 |
| Succotash, LLC | Sandy Valley, NV | 219-22-101-014 | 2.5 |
| Succotash, LLC | Sandy Valley, NV | 219-04-301-008 | 5 |
| Succotash, LLC | Sandy Valley, NV | 200-22-301-003 | 10 |
| Succotash, LLC | Sandy Valley, NV | 200-23-201-025 | 10 |
| Succotash, LLC | Las Vegas, NV | 176-17-701-011<br>176-17-701-012<br>176-17-701-013<br>176-17-701-014 | 5 |
| Southwest Desert Equities, LLC | NW Las Vegas, NV | 125-35-702-003<br>125-35-702-004<br>125-35-702-005 | 7.2 |
| Southwest Desert Equities, LLC | NW Las Vegas, NV | 126-01-801-018 | 5 |
| Southwest Desert Equities, LLC | NW Las Vegas, NV | 126-01-801-011 | 2.5 |
| Southwest Desert Equities, LLC | Pahrump, NV | 35-561-04 | 1.3 |
| Southwest Desert Equities, LLC | NW Las Vegas, NV | 126-02-501-007 | 2.5 |

- 2 -

AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER
AND THE FOCUS ENTITIES DATED JULY 6, 2017

| Real Property Held By Focus Entities | | | |
|---|---|---|---|
| Focus Entity | Location | APN | Acres |
| Victor Investments, LP | Victorville, CA | 3133-071-07 | 8.6 |
| Victor Investments, LP | Victorville, CA | 3097-411-03<br>3097-411-04 | 9.1 |
| Victor Investments, LP | Victorville, CA | 3133-061-12 | 5 |
| Victor Investments, LP | Victorville, CA | 3133-061-13 | 2.5 |

| Miscellaneous Equity Interests Held By Focus Entities | | |
|---|---|---|
| Focus Entity | Equity Interest | Underlying Asset |
| NGA #2, LLC | 56% Interest in Equity Holdings Management, LLC | APN 177-16-802-036 Bank Account |
| PV Land Investments, LLC | 100% Interest in Puerto View, LLC | Certain Water Rights in Nye County |

| Prepack Class B Membership Interests | |
|---|---|
| Focus Entity Holding Class B Membership Interest | Prepack Entity |
| Agave Properties, LLC | B-VV1, LLC |
| Agave Properties, LLC | B-VV2, LLC |
| NGA #2, LLC | C-NGA312, LLC |
| NGA #2, LLC | C-NGA315, LLC |
| NGA #2, LLC | C-NGA313, LLC |
| NGA #2, LLC | C-NGA318, LLC |
| Victor Investments, LP | B-VLP1, LLC |
| Victor Investments, LP | B-VLP2, LLC |
| JV Properties, LLC | B-JVP1, LLC |
| NGA #2, LLC | B-NGAE3, LLC |
| NGA #2, LLC | C-NGA317, LLC |

- 3 -

| Prepack Class B Membership Interests | |
| --- | --- |
| Focus Entity Holding Class B Membership Interest | Prepack Entity |
| Focus South Group, LLC | C-FSG425, LLC |
| Focus South Group, LLC | C-FSG426, LLC |
| Focus South Group, LLC | C-FSG427, LLC |
| Focus South Group, LLC | C-FSG428, LLC |
| PV Land Investments, LLC | B-PVL1, LLC |
| PV Land Investments, LLC | B-PVL2, LLC |
| Southwest Desert Equities, LLC | B-PWR, LLC |
| NGA #2, LLC | B-PWR, LLC |
| PV Land Investments, LLC | C-PV330, LLC |
| PV Land Investments, LLC | C-PV332, LLC |
| PV Land Investments, LLC | C-PV323, LLC |
| Southwest Desert Equities, LLC | A-SWDE1, LLC |
| Southwest Desert Equities, LLC | C-SWDE393, LLC |
| Southwest Desert Equities, LLC | C-SWDE394, LLC |
| Southwest Desert Equities, LLC | B-SWDE2, LLC |
| Southwest Desert Equities, LLC | B-SWDE3, LLC |
| Southwest Desert Equities, LLC | B-SWDE7, LLC |
| Southwest Desert Equities, LLC | B-SWDE6, LLC |

- 4 -

| Prepack Class B Membership Interests | |
|---|---|
| **Focus Entity Holding Class B Membership Interest** | **Prepack Entity** |
| Southwest Desert Equities, LLC | G-SWDE1, LLC |
| Southwest Desert Equities, LLC | C-SWDE382, LLC |
| Southwest Desert Equities, LLC | C-SWDE383, LLC |
| Southwest Desert Equities, LLC | C-SWDE384, LLC |
| Northwest Investment, LLC | B-NWI2, LLC |
| Northwest Investment, LLC | B-NWI4, LLC |
| Northwest Investment, LLC | C-NW358, LLC |
| Northwest Investment, LLC | C-NW360, LLC |
| Northwest Investment, LLC | C-NW361, LLC |
| Northwest Investment, LLC | C-NW362, LLC |
| NGA #2, LLC | A-NGAE1, LLC |
| Southwest Desert Equities, LLC | C-SWDE348, LLC |
| Succotash, LLC | B-SCT2, LLC |
| JV Properties, LLC | SV82, LLC |
| Succotash, LLC | B-SCT1, LLC |

- 5 -

## Schedule 3

**Personal Secured Claims**

1.  Claims under that certain Promissory Note dated January 8, 2008 by and between John Albert Ritter and Caribbean Capital Lenders, LLC in the principal amount of $475,000 secured by a Deed of Trust on the real property with APN 108-15-035B dated January 8, 2008.

2.  Claims under that certain Promissory Noted dated January 8, 2008 by and between the Mustang Trust and Caribbean Capital Lenders, LLC in the principal amount of $346,750 secured by a Deed of Trust on the real property with APN 108-15-071A dated January 8, 2008.

## <u>Schedule 4</u>

### Ritter Backstop Collateral

1. Any cash located in the Cash Collateral Account.

2. The following life insurance policies (together, the "<u>Life Insurance Policies</u>"):

    a. That certain Lincoln National Life Insurance Company variable universal life insurance policy number 4832009;

    b. The certain Pacific Life Insurance Company life insurance policy numbers 0023038600; VP60317510; VP60584270.

3. The following real estate (collectively, the "<u>Ritter Real Estate Collateral</u>"):

    a. 8565 W. Washburn Rd., Las Vegas, NV 89149;

    b. 8585 W. Washburn Rd., Las Vegas, NV 89149

    c. 8595 W. Washburn Rd., Las Vegas, NV 89149;

    d. 885 Maverick Mountain, Prescott, AZ 86303;

    e. 1972 Sherwood Dr., Prescott, AZ 86303; and

    f. APN 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 (18 acres in Prescott, AZ)

4. Ritter's beneficial interest in the JS NV 2009 Irrevocable Trust, subject to the terms and conditions of the Plan.

- 1 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER
AND THE FOCUS ENTITIES DATED JULY 6, 2017**

## Schedule 5

### Non-Exempt Assets

| Management Interests | |
|---|---|
| **Parent Entity** | **Management Interest** |
| Las Vegas Properties, LLC | 6.99% Management Interest in Kyle North Holdings, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in Desert Hills Properties, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in Focus 2K, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in Focus Land Fund, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in Ironwood Properties, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in KR Land Company, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in Millennium Focus, LLC |
| Las Vegas Properties, LLC | 29% Management Interest in WF Investors, LLC |
| Las Vegas Properties, LLC | 45% Interest in Landtek CA, LP |
| Las Vegas Properties, LLC | 72% Interest in Landtek, LLC |
| Holdings Manager, LLC | 1% Management Interest in Desert Hills Properties, LLC |
| Holdings Manager, LLC | 1% Management Interest in Focus 2K, LLC |
| Holdings Manager, LLC | 1% Management Interest in Focus Land Fund, LLC |
| Holdings Manager, LLC | 1% Management Interest in Ironwood Properties, LLC |
| Holdings Manager, LLC | 1% Management Interest in KR Ironwood Properties, LLC |
| Holdings Manager, LLC | 1% Management Interest in Millennium Focus, LLC |
| Holdings Manager, LLC | 1% Management Interest in WF Investors, LLC |

| Non-Exempt Assets Held Directly By Ritter/Mustang Trust |
|---|
| 1965 Ford Mustang |
| 1980 Sherwood Drive, Prescott, AZ |
| 1959 Forest Hills Rd., Prescott, AZ |
| Valley Bank of Nevada Stock |
| First Security Bank Stock |

- 1 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER
AND THE FOCUS ENTITIES DATED JULY 6, 2017**

| Assets Indirectly Owned By Ritter/Mustang Trust | | |
|---|---|---|
| **Holding Company** | **Interest in Holding Company** | **Asset Held By Holding Company** |
| Focus 2K, LLC | 9.42% | 18.75% Interest in Hidden Ridge, LLC |
| Focus Land Fund 97, LLC | 2% | 46.25% Interest in Hidden Ridge, LLC |
| Ironwood Properties, LLC | 1.45% | 28.75% Interest in Hidden Ridge, LLC |
| Acacia Properties, LLC | 50% | Bank Account<br>126-01-801-003<br>126-02-601-001 |
| Artfullhouse, LLC | 95% | Bank Account<br>2539 E. Glenrosa, Phoenix, AZ<br>2639 E. Pierson, Phoenix, AZ |
| Desert Willow Prescott, LLC | 95% | Bank Account<br>2366 Desert Willow, Prescott, AZ |
| Focus Contribution, LLC | 54.2% | Bank Account |
| Holdings Manager, LLC | 99.9% | Bank Account<br>Certain Management Interests (see above)<br>20% Interest in Northwest 95, LLC |
| Las Vegas Properties, LLC | 99.9% | Bank Account<br>Certain Management Interests (see above) |
| PUH #1, LLC | 51% | Water Utility |
| RB Medical Equities, LLC | 50% | Bank Account |
| J.R. Consolidated Holdings, LLC | 99.9% | Bank Account |
| Laguna Sand and Surf, LLC | 32.3% | 631 Cliff Dr., Unit B-6, Laguna Beach, CA |
| Ocotillo Properties, LLC | 30% | Bank Account |
| TKTS Nee, LLC | 95% | Bank Account |
| Vegas Equities, LLC | 99% | Bank Account |
| Focus Investment Manager, LLC | 99% | No Assets – Management Entity |
| LEHM, LLC | 99.9% | No Assets – Management Entity |

- 2 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER**
**AND THE FOCUS ENTITIES DATED JULY 6, 2017**

## <u>Schedule 6</u>

## Bank Accounts

| Entity | Bank | Last Four Digits of Account Number |
|--------|------|-------------------------------------|
| John Ritter | US Bank | 0363 |
| John Ritter | US Bank | 9829[2] |
| Agave Properties | US Bank | 5775 |
| Cliffrose Investments | US Bank | 5783 |
| Focus South Group | US Bank | 5791 |
| JV Properties | US Bank | 5809 |
| N.G.A. #2 | US Bank | 5825 |
| Northwest Investments | US Bank | 5817 |
| PV Land Investments | US Bank | 5833 |
| Saguaro Equities | US Bank | 5858 |
| Succotash | US Bank | 5858 |
| Southwest Desert Equities | US Bank | 5866 |
| Victor Investments | US Bank | 5882 |

---

[2] Pursuant to Section 7.3(b) of the Plan, Mr. Ritter will retain $100,000 from the account ending 9829.

- 3 -

**AMENDED JOINT PLAN OF REORGANIZATION OF JOHN A. RITTER**
**AND THE FOCUS ENTITIES DATED JULY 6, 2017**